Filed 3/21/13  P. v. Moye CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061829 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD225582) |
| RICHARD MOYE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.


In this case, which we review under the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), we affirm the appellant's murder conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2003, defendant and appellant Richard Moye, shot and killed M'shindi Ford during the course of robbing Ford of three pounds of marijuana.  Moye was not apprehended until May 2010.

At Moye's trial, the principal witness against him was his accomplice, Gerardo Soto. Moye and Soto were childhood friends, and according to Soto, Moye always had a gash on one of his left front teeth.

Soto met the victim, Ford, on the beach in San Diego in 2000 and occasionally purchased marijuana from him. Soto usually bought two-pound quantities of marijuana from Ford.

By 2003, Moye and Soto were living in Yuma, Arizona. In March 2003, Moye and Soto decided to rob Ford because Ford was not violent, and they thought he would be an easy target.

Soto contacted Ford on his cell phone and made a number of calls to Ford on March 17 and March 18. Soto asked Ford if Soto could buy two or three pounds of high quality marijuana.

Moye and a second confederate, Andy, went to Ford's on March 17, but Ford was not able to contact his source of supply.

On March 18, Soto contacted Ford by cell phone again and very shortly thereafter, around 2:00 p.m., Soto dropped Moye at Ford's house. Moye was carrying a duffel bag for the marijuana and $4,000 in cash. He was armed with a nine-millimeter handgun and another handgun that Soto could not identify. Moye returned to Soto's car about 20 minutes later with the marijuana in the duffel bag and the cash.

Moye told Soto he shot Ford, and then he vomited in Soto's car. They drove back to Yuma, and along the way, Moye threw the guns in a dumpster.

Soto pled guilty to voluntary manslaughter, vicarious arming and conspiracy to

2

commit robbery in exchange for an agreement in which he would receive a prison sentence of between eight and 13 years.

A number of other witnesses corroborated material portions of Soto's version of events: One witness, a close friend of Ford, stated that on the evening before the shooting he went to Ford's apartment in South Mission Beach and was introduced to an African-American male in his twenties named Richard. The friend testified that a second White or Hispanic male was also at Ford's apartment. According to the friend, Richard had a rotten front tooth and was similar in appearance to Moye.

A second witness, another friend of Ford, testified that on the day of the shooting he was smoking marijuana with Ford when they were approached by a young African-American male who was wearing a hooded sweatshirt and carrying a black duffel bag. Ford asked the friend to leave because Ford had to take care of some business. The friend left and returned 30 minutes later; he then discovered that Ford had been shot. At trial, the friend conceded that he was high on marijuana and beer on the day of the shooting but nonetheless identified Moye as the African-American male who had approached Ford earlier.

Ford's source of supply and his former wife also testified. They witnessed the robbery and the shooting and identified Moye as the shooter, although not with complete certainty.

Later, during a search of Moye's residence, investigators found a journal in which Moye had written about "his crimes and being a fugitive," including having robbed and killed.

3

Moye was found guilty of first degree murder and a firearm enhancement was found true. (Pen. Code, §§ 187, subd. (a) & 12022.53, subd. (d).) Moye was sentenced to a term of 50 years to life in prison.

DISCUSSION

Moye's appointed appellate counsel has filed a brief setting forth the underlying facts and procedural history and presenting no argument for reversal but asking this court to review the record for error in accordance with *Wende*. Pursuant to *Anders*, counsel refers to the following possible, but not arguable, issues: (1) Did trial counsel render ineffective assistance of counsel in failing to adequately present third party culpability evidence? (2) Did trial counsel render ineffective assistance of counsel in failing to move to suppress or otherwise object to evidence of Moye's journal entries? (3) Was there sufficient evidence of first degree murder?

We granted Moye permission to file a brief on his own behalf and he responded. In addition to the issues raised by counsel, Moye contends (a) the prosecutor knowingly presented perjured testimony; (b) he was unduly prejudiced when he was escorted to the restroom by a bailiff while in shackles; (c) his counsel failed to properly investigate the case, in particular in failing to obtain evidence which would impeach Soto with respect to a statement Soto made to detectives about a conversation between Moye and his brother and in failing to obtain DNA evidence from the crime scene; (d) his counsel failed to vigorously defend him at trial, in particular counsel failed to make an opening statement, failed to call any witnesses on Moye's behalf and failed to vigorously cross-examine one of the corroborating witnesses with respect to inconsistent statements the witness gave

4

police at the time of the shooting; (e) the prosecutor violated his rights under *Brady v. Maryland* (1963) 373 U.S. 83; and (f) cumulative error.

We have reviewed the entire record pursuant to *Wende* and considered the possible issues referred to by counsel and Moye, and we find no reasonably arguable appellate issue.

There is nothing in the record that would suggest the existence of any third party culpability evidence. (See *People v. Hall* (1986) 41 Cal.3d 826, 833; *People v. Elliott* (2012) 53 Cal.4th 535, 580 [direct or circumstantial evidence linking third party to crime must be sufficient to raise reasonable doubt needed].) The record shows that investigators were eventually able to connect Soto to the murder by way of reviewing cell phone records and that Soto in turn cooperated with the investigators and identified Moye as the shooter. Moye's journal was discovered in a home owned by a third party; thus, although the record does not indicate whether the journal was seized pursuant to a warrant, in any event Moye had no reasonable expectation of privacy in that home. (See *People v. Ayala* (2000) 23 Cal.4th 225, 255.) The contents of the journal were admissible under Evidence Code section 1220 as the statements of a party opponent.

There is overwhelming evidence of Moye's guilt. Soto's testimony against him was corroborated in all material respects by the testimony of multiple unrelated eyewitnesses; in particular, we note the cell phone records which support Soto's testimony that he was attempting to obtain marijuana from Ford and the testimony of the source of supply and his former wife that Ford was killed by an African-American male who was present to buy marijuana from Ford.

There is no evidence in the appellate record which supports Moye's contention that the prosecutor presented perjured testimony or violated his rights under *Brady v. Maryland*. Although any inadvertent exposure of shackles to the jury was presumptively prejudicial, in light of the overwhelming evidence of his guilt there is not probability that it effected the jury's verdict. (See *People v. Slaughter* (2002) 27 Cal.4th 1187, 1213 ["Even a jury's brief observations of physical restraints generally have been found nonprejudicial."].)

Counsel's failure to investigate DNA evidence was reasonable in light of the fact that the case against Moye was not based on DNA evidence, and there was little likelihood Ford's killer would have left any DNA at the scene. Similarly, because evidence of what Soto's brother may have told Soto was not likely to be admissible, Moye was not prejudiced by counsel's failure to develop evidence impeaching Soto on that issue.

With respect to Moye's argument that counsel was ineffective at trial, we note each area of criticism was an arguable tactical decision by counsel and thus not a grounds for disturbing Moye's conviction. (See *Strickland v. Washington* (1984) 466 U.S. 668, 689; *In re Andrews* (2002) 28 Cal.4th 1234, 1253.) Moreover, in light of the strength of the prosecution's case, none of the matters Moye relies upon was prejudicial either singularly or cumulatively.

We find Moye was adequately represented by counsel on appeal.

6

DISPOSITION

The judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.

7