Filed 12/16/13  P. v. Smith CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071696 |
| Plaintiff and Respondent, | (Super. Ct. No. 97F07219) |
| v. | |
| ANTHONY BERNARD SMITH, | |
| Defendant and Appellant. | |

A jury convicted defendant Anthony Bernard Smith in 1998 of one count of residential burglary, two counts of residential robbery, and one count of forcible oral copulation, and also found that defendant personally used a handgun during these offenses and that the oral copulation was committed during a burglary. (Pen. Code, §§ 459, 211, 288a, subd. (c), 12022.5, subd. (a), 12022.3, subd. (a), & former 667.61, subd. (e)(4), (2).) These offenses arose out of a home invasion involving two intruders.[1]

---

[1]  A second, unrelated count of residential burglary was resolved before trial by defendant's guilty plea.

Defendant received a 25-year-to-life sentence on the oral copulation and a 20-year consecutive determinate term on the other counts. In 2000, this court affirmed the judgment. (*People v. Smith* (June 23, 2000, C031225) [nonpub. opn.].)

Federal habeas corpus proceedings culminated successfully for defendant in 2010; his oral copulation conviction was overturned on the basis that the trial court coerced the jury's verdict on that charge.

The present appeal involves a jury retrial of defendant's oral copulation charge and its enhancements noted above, for which defendant met the same fate (and sentence) as the initial trial.

On appeal, defendant claims instructional error regarding third party culpability and weapon use, as well as counsel ineffectiveness and prosecutorial misconduct. We shall affirm the judgment.

## FACTUAL BACKGROUND

### *The Home Invasion*

On a Sunday afternoon in September 1997, Eugene S. was watching football on television when he saw a man at his door, claiming to be selling newspaper subscriptions. Eugene declined and returned to the couch, only to discover the man right next to him, holding a gun against Eugene's head and demanding money (the previous night, Eugene had won $4,000 gambling at Lake Tahoe). A second man entered Eugene's home, and remained with Eugene in the living room while the gunman went to search the rest of the house. Eugene gave the second man the money from his wallet—a $5 bill and three $1 bills. The second man also grabbed a knife from the kitchen, which he used to threaten Eugene and rip open a wrapped package his wife had prepared to mail.

Deanna S., Eugene's wife, was in the back bedroom when she became aware of the commotion in the living room. Deanna called 911 and hid by the bed. The gunman

2

found her, robbed her of a $100 bill, and forced her at gunpoint to orally copulate him to ejaculation. Deanna spit the ejaculate onto the carpet and wiped her mouth with the T-shirt she had been wearing. Deanna tried to avert eye contact with the gunman and kept her eyes closed most of the time.

Upon hearing a police siren chirp outside, the second man forced Eugene to the back bedroom; there, the gunman was seen shirtless, having taken off his T-shirt to wipe away fingerprints. The second man told the gunman they had to flee, which the two men did out the front door.

*Witness Identification Evidence*

Officer August Johnson, the first officer to arrive on the scene, saw two African-American men of similar height and build run out of the house. One was shirtless, and apparently wearing jean shorts and tennis shoes. The other man was wearing a plaid shirt and dark pants. Johnson gave chase, the two men split up, and Johnson followed the shirtless one, who outran Johnson.

Meanwhile, another responding officer, Eric Poerio, and his K-9 partner Ajax, engaged a suspect, James Hinex, whose height, build, and race matched the description of the two suspects. Hinex was shirtless, wearing blue jean shorts and white tennis shoes. He had a light goatee and mustache, and was carrying $8 crumpled up in his front pants pocket, consisting of a $5 bill and three $1 bills.

In an in-field showup, Deanna identified Hinex as the sexual assailant, and Eugene identified Hinex as one of the men who was in the house.

In a photo lineup containing defendant's picture, Deanna identified defendant as "[m]aybe" the sexual assailant, commenting "it's the eyes." Deanna failed to identify Hinex from a lineup containing his photo, but identified a "filler" (decoy) picture as the

sexual assailant, commenting that she did not remember the assailant as having a mustache.

In a photo lineup containing defendant's picture, Eugene identified a filler photo as the gunman. In a lineup with Hinex's photo, Eugene identified Hinex as the gunman.

At trial, Deanna and Eugene testified that her sexual assailant wore a white T-shirt, shorts, and tennis shoes, and that the other intruder wore a plaid shirt (and Eugene added, black pants).

### *Forensic Evidence*

Defendant's fingerprints did not match any of the latent impressions collected, but a fingerprint of Hinex's matched an impression collected from the knife-ripped wrapping paper on the package at the victims' house.

Three carpet swabs from Deanna's bedroom as well as the shirt she had worn (at the time of the sexual assault) were subjected to serological and DNA testing.

The serologist deduced that the semen donor had type B blood and antigens; defendant was the only one of the four involved (he, Hinex, Deanna, Eugene) who was type B. Type B secretors are found in 15 percent of the African-American population.

DNA testing in 1997 of sperm on Deanna's shirt, using the PCR (polymerase chain reaction) method, disclosed a match to defendant's DNA profile, and excluded Hinex and Eugene (Deanna was also excluded as she was incapable of producing sperm). A random match probability was 1 in 1,450 in the African-American population.

DNA testing in 2010 of sperm on the two T-shirt cuttings and two of the carpet swabs, using the current short tandem repeat (STR) method, disclosed a match to defendant's DNA profile, and excluded Hinex and Eugene (and, again, Deanna was excluded). A random match probability was 1 in 640 quintillion.

4

*Defendant's Statement to the Police*

In a statement to the police, defendant admitted that he and Hinex were the home invaders. He stated that he initially had the gun, then gave it to Hinex who went into the woman's bedroom; defendant later got the gun back when Hinex found a knife. Defendant then went into the woman's bedroom with the gun, and she gave him $100. Defendant denied being the sexual assailant, and denied ejaculating.

## DISCUSSION

### I. The Issues Involving Third Party Culpability

The only offense retried was forcible oral copulation. The defense pegged Hinex as the perpetrator.

Under the defense of third party culpability, the evidence need not show beyond a reasonable doubt that Hinex was the sexual assailant, but need only raise a reasonable doubt that defendant was. (*People v. Earp* (1999) 20 Cal.4th 826, 887 (*Earp*); see also *People v. Hall* (1986) 41 Cal.3d 826, 829.)

Defendant contends that four alleged errors—his counsel's ineffectiveness in failing to request a third party culpability instruction and in failing to object to the prosecutor's argument on this theory, and two instructions that were given—individually and cumulatively shredded his third party culpability defense. According to defendant, these four alleged errors improperly characterized the third party culpability defense as requiring that Hinex be shown beyond a reasonable doubt to have been the sexual assailant; as noted, under this defense, the evidence need only have raised a reasonable doubt that defendant was the perpetrator. We discuss these four alleged errors and find no reversible error.

### A. *Ineffective Assistance*

To establish ineffective assistance of counsel, defendant must show (1) his counsel failed to act as a reasonably competent attorney and (2) defendant was prejudiced—i.e.,

5

there is a reasonable probability defendant would have fared better had counsel not failed. (*In re Avena* (1996) 12 Cal.4th 694, 721.)

Defendant claims his counsel was ineffective in declining an instruction on third party culpability; as counsel told the trial court, he was declining "in part because of [defendant's] statement to" the police. Presumably, a third party culpability instruction would have stated along the lines: " 'Evidence has been offered that a third party is the perpetrator of the charged offense. It is not required that the defendant prove this fact beyond a reasonable doubt. In order to be entitled to a verdict of acquittal, it is only required that such evidence raise a reasonable doubt in your minds of the defendant's guilt.' " (See *Earp*, *supra*, 20 Cal.4th at p. 887.)

Defendant's statement to the police effectively admitted he committed the home invasion offenses, *except for* the oral copulation, which left only Hinex as the sexual assailant. Thus, defendant's statement to the police was in line with his third party culpability defense (to the oral copulation charge, the only charge on retrial) and defense counsel appears to have performed ineffectively in declining such an instruction at the retrial. The question becomes whether defendant was prejudiced by this ineffective assistance, a question we will address in our analysis of defendant's four alleged errors below.

Defendant also claims his counsel rendered ineffective assistance by failing to object to the prosecutor's closing argument that asked the jurors to imagine this case with exactly the same evidence, but with one distinction: Instead of defendant, Hinex was on trial for the oral copulation. In this argument, the prosecutor stated that Hinex's counsel probably would have thought the district attorney crazy to bring such a charge, given that Hinex was the man who stayed with Eugene S. and took the $8 from him, while defendant was the one with Deanna S. and took the $100 from her.

We can conceive of a tactical reason why defense counsel did not object to this specific argument; therefore, on appeal, we find no ineffective assistance on this point. (See *People v. Fosselman* (1983) 33 Cal.3d 572, 581-582 [this rule is necessary so that appellate courts do not second-guess every unstated trial tactic of a defense counsel].) Defense counsel reasonably may have thought that since the prosecutor's argument emphasized the witness identification evidence (which tended to show Hinex as the sexual assailant) rather than the forensic evidence (which squarely tagged defendant), defense counsel would simply let this point go without objection. To the extent the prosecutor's argument put Hinex on trial (subject to proof beyond a reasonable doubt instead of the third party culpability defense standard of proof that merely requires a reasonable doubt that defendant was the perpetrator), it will figure in our analysis of defendant's four alleged errors in this regard.

### B. The Two Challenged Instructions

Defendant's remaining two alleged errors regarding the third party culpability defense concern two instructions.

First, the trial court instructed the jury with the standard instruction for evaluating conflicting evidence, CALCRIM No. 302, as pertinent: "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. . . . What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point."

Defendant argues that, under this instruction, jurors would resolve evidentiary conflicts by asking whether defendant did the oral copulation or whether Hinex did; and jurors, improperly, would credit evidence of Hinex's (third party) culpability *only if* they found such evidence believable and convincing, rather than, properly, if such evidence merely raised a reasonable doubt that defendant did the oral copulation.

Second, the trial court gave CALCRIM No. 315, which lists the commonsense factors in evaluating eyewitness identification testimony (e.g., the circumstances of the observation, the certainty of the identification), but the court modified that instruction's preface as follows:  "You have heard eyewitness testimony identifying a suspect [substituting "suspect" for "the defendant"].  As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony."

Defendant argues that under this substituted wording, the trial court gave the benefit accorded defendant—the standard of proof beyond a reasonable doubt, based on identification factors raising a reasonable doubt concerning identification—instead to Hinex; and that this instruction suggested that jurors should credit Deanna's and Eugene's eyewitness identification of Hinex as the sexual assailant *only if* the jurors found such identification of Hinex to be "truthful and accurate."

## *C.  Analysis*

As noted, defendant claims the two alleged errors involving ineffective assistance and the two alleged errors involving instructions, individually and cumulatively, effectively told the jury that his third party culpability defense required evidence showing beyond a reasonable doubt that Hinex was the sexual assailant, rather than evidence simply raising a reasonable doubt of defendant's guilt.  We find defendant was not prejudiced by these alleged errors.

As for the claimed ineffective assistance, we found only defense counsel's declination of the third party culpability instruction to be ineffective.  Counsel's failure to object to the prosecutor's argument (about Hinex being tried) arguably highlighted the defense-favorable witness identification evidence (which tended to show Hinex as the sexual assailant).  And to the extent the prosecutor's challenged argument put Hinex on trial subject to proof beyond a reasonable doubt, that argument also emphasized that defendant, who actually was on trial, was subject to such a standard of proof as well.  In

8

determining whether a counsel's particular ineffectiveness has been prejudicial, we ask whether there is a reasonable probability defendant would have fared better had counsel not been ineffective. (*In re Avena*, *supra*, 12 Cal.4th at p. 721.)

As for the two challenged instructions, the eyewitness identification instruction with the substituted word "suspect" arguably highlighted, too, the defense-favorable witness identification evidence. The instruction on resolving evidentiary conflict was a simple matter of common sense, stated simply. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 940.) And when, as here, we review an instruction alleged to be ambiguous, we ask whether there is a "reasonable likelihood" the jury applied the instruction in an unconstitutional manner; if not, instructional error is reviewed under the similar reasonable probability standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), which asks whether there is a reasonable probability defendant would have fared better absent the error. (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399]; *People v. Campos* (2007) 156 Cal.App.4th 1228, 1244; *People v. Palmer* (2005) 133 Cal.App.4th 1141, 1156-1157.)

In determining the prejudicial effect of defendant's alleged errors, we find helpful a decision from our state Supreme Court, *Earp*, *supra*, 20 Cal.4th 826. In *Earp*, the high court found harmless a trial court's refusal to give a third party culpability instruction (the high court assumed, for the sake of argument, this instruction applied), reasoning: "The jury was instructed under [the reasonable doubt instruction] that the prosecution had to prove defendant's guilt beyond a reasonable doubt, and the jury knew from defense counsel's argument the defense theory that [the third party], not defendant, had committed the crimes. Under these circumstances, it is not reasonably probable that had the jury been given defendant's proposed [third party culpability] instruction, it would have come to any different conclusion in this case." (*Earp,* at p. 887 [using the "reasonably probable" standard of harmless error of *Watson, supra,* 46 Cal.2d at p. 836].)

9

Similar reasoning applies here. The jury was properly instructed that the People had to prove defendant guilty beyond a reasonable doubt. It could not have escaped the jury's attention that the defense here was that Hinex was the sexual assailant rather than defendant. Under these circumstances, it is not reasonably probable that defendant would have fared better absent trial counsel's ineffectiveness. And since there is not a reasonable likelihood the jurors applied the challenged instructions unconstitutionally to dilute this standard of proof applicable to defendant, the similar "reasonably probable" standard of harmless error applies to the allegedly ambiguous instructions, with a similar result of no prejudice.

## II. Prosecutorial Misconduct and Ineffective Assistance

To preclude conviction bias against defendant, the parties stipulated before trial that they would not mention that Hinex had been convicted for his role in the home invasion.

Defendant contends the prosecutor committed misconduct and his counsel rendered ineffective assistance when the prosecutor breached this stipulation during closing argument and defense counsel failed to object. We disagree.

During closing argument, defense counsel argued that the STR-DNA expert erred on the side of the prosecution because that expert "was a little less than forthcoming about [DNA] contamination issues"; this, in turn, the defense argued, allowed the expert to implicate defendant, using outlandish probability numbers.

In response to this argument, the prosecutor argued in closing that had the STR-DNA expert been biased for the prosecution, she simply would have implicated Hinex in line with the witness identification evidence. Defense counsel did not object to these remarks.

10

We see no prosecutorial misconduct and no ineffective assistance of counsel for the simple reason that the prosecutor, in this argument, did not mention that Hinex had been convicted for his role in the home invasion.

### III.  Weapon-use Instructions

On retrial, defendant was charged with a single offense:  forcible oral copulation. As enhancements to this offense, it was alleged that defendant personally used a deadly weapon during this offense, that defendant personally used a firearm during this offense, and that defendant committed this offense during a burglary.

Defendant notes the weapon-use "instructions . . . did not specify that the weapon must be use[d] in the commission of oral copulation.  Instead, the instructions directed the jury to find whether a weapon was used in the commission of the 'crime charged.' " From this, defendant argues:  "Because in the everyday meaning of words, burglary is a 'crime' which was included in the 'charges,' the jury could interpret the instructions to mean that any weapon use during the course of the burglary would be sufficient to support a weapon-use finding."  For this reason, defendant adds, the weapon-use instructions were ambiguous and the trial court erred in failing to define, on its own initiative (sua sponte), the meaning of these quoted legal terms (and other similar terms) that were used in the instructions.  We disagree.

"A court has no sua sponte duty to define terms that are commonly understood by those familiar with the English language, but it does have a duty to define terms that have a technical meaning peculiar to the law."  (*People v. Bland* (2002) 28 Cal.4th 313, 334.) This case falls within the "no sua sponte duty."

11

The trial court instructed the jury, as pertinent, in the following order (we have deleted additional instruction language interspersed between these points):

- "The defendant is charged with oral copulation by force or fear in violation of Penal Code section 288a[, subdivision] (c)(2)."  (The court then set forth the elements of this crime.)  (See CALCRIM No. 1015.)

- "If you find the defendant guilty of the crime charged, you must then decide whether the People have proved the additional allegation that the defendant personally used a deadly or dangerous weapon during the commission of that crime."  (See CALCRIM No. 3145.)

- "If you find the defendant guilty of the crime charged, you must then decide whether the People have proved the additional allegation that the defendant personally used a firearm during the commission of that crime."  (See CALCRIM No. 3146.)

- "If you find the defendant guilty of the crime charged, you must then decide whether the People have proved the additional allegation that the defendant committed the crime during the commission of a burglary."  (See CALCRIM No. 3180.)

Furthermore, the jury's verdict form was structured along these same lines.

Under these instructions, and as was clear during retrial, the "crime charged" and the "crime" was forcible oral copulation, not burglary, and the weapon use had to be during the "crime charged"—i.e., during the forcible oral copulation, not the burglary. The weapon-use instructions were not ambiguous on this point, and the trial court had no sua sponte duty to clarify what was already clear in everyday parlance.

## IV. Custody Credits

The trial court awarded defendant 6,227 days of custody credits (consisting of 5,414 days for actual time served and 812 days of conduct credit), but the abstract of judgment fails to note these credits. We will direct the trial court to make this correction. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect the custody credits specified in part IV. of this opinion and to send a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

                                                  BUTZ                  , J.

We concur:

      ROBIE              , Acting P. J.

      HOCH              , J.