Filed 2/20/14  P. v. Perez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAIME GUERRA PEREZ,<br><br>Defendant and Appellant. | F065918<br><br>(Super. Ct. No. DF010787B)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Robert S. Tafoya, Judge.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Gomes, J. and Poochigian, J.

Defendant Jaime Guerra Perez was convicted by jury of first degree burglary and receiving stolen property. On appeal, he contends the trial court violated his constitutional rights and abused its discretion by excluding evidence of the testifying victim's alleged drug dealing activities. We will affirm.

## PROCEDURAL SUMMARY

On May 15, 2012, the Kern County District Attorney charged defendant with first degree burglary (Pen. Code, § 460, subd. (a);[1] count 1) and receiving stolen property (§ 496, subd. (a); count 2). As to both counts, the information alleged defendant had a prior strike conviction (§§ 667, subd. (c)-(j), 1170.12, subds. (a)-(e)), and had served three prior prison terms (§ 667.5, subd. (b)). As to count 1, the information alleged defendant had suffered a prior serious felony conviction (§ 667, subd. (a)).

A jury found defendant guilty on both counts. The trial court found the prior conviction allegations true and granted the prosecution's motion to strike the prior prison term allegations. The court sentenced defendant to a total of 17 years in prison on count 1 and stayed sentence on count 2 pursuant to section 654.

## FACTS

The victim, an agricultural worker, lived in a rental house on Browning Road. On April 30, 2012, he left for work at 5:30 a.m. His nephew, who lived in the house with him, had already left for work. The victim locked his doors when he left. After work, he got a ride home with a coworker. As they pulled up to the house around 3:00 p.m., the victim saw three males exiting the front door of his house with two televisions. The televisions belonged to him and his nephew. The victim had not given the males permission to enter his house or take the televisions. He estimated the males were about 13 years old, 25 years old, and over 30 years old. The two adults were codefendant

---

[1] All statutory references are to the Penal Code unless otherwise noted.

Cordova and defendant.[2]  The victim had not seen the three males before.  As they walked down the driveway and left with the televisions, the victim and coworker immediately pulled back out and headed south on Browning Road, following the three males closely as they walked toward the intersection with A Street, which was about 70 yards south of the victim's house.

Meanwhile, two uniformed police officers were on routine patrol in the neighborhood in a marked patrol vehicle, heading north on Browning Road, approaching the intersection with A Street from the south.  They observed the three males crossing the street and walking fast.  The young male was less than five feet tall and under 100 pounds.  The other two males were carrying items.  As the officers got closer, they could see that the items were flat-screen televisions.  The officers watched as the three males crossed onto A Street, and the officers turned and followed them.  The victim and his coworker parked the truck and waited nearby on Browning Road, unnoticed by the officers.

When the males looked back and realized they were being followed by a patrol vehicle, they moved closer together, hastened their pace, and walked toward the nearby entrance to an alley off of A Street.  After they walked into the alley, the patrol vehicle followed.  An officer yelled from the vehicle for the males to stop, but they refused, quickening their pace instead.  The officers exited their vehicle and detained them.  Cordova was still holding a television.  An officer told him to gently place it on the ground.  Defendant had placed the television he was carrying on top of the six-foot tall cinder block wall surrounding a back yard.  An officer patted down the males to check for weapons, finding no weapons or cutting tools.  The young male had a bottle of cologne in his pants pocket.  The officer set it on the hood of the vehicle.

---

[2]      Cordova was born in 1992 and defendant was born in 1984.

3.

While the officers detained the three males and asked them where they got the televisions, the victim got out of the truck and approached. He told the police he had just been burglarized and the televisions and cologne were his. The officers gave the victim the cologne and the television that was sitting on the ground, and he returned home with the property. After the three males were removed from the scene and the second television safely lowered from the cinder block wall, an officer took the second television to the victim's house. The victim noticed that the cable to one of the televisions had been cut rather than unscrewed.

At the victim's house, the victim's locked bedroom door had been forced open and both his and his nephew's bedrooms had been ransacked. The two televisions and cologne were missing. The kitchen window had been opened and items pushed into the sink. The officer and the victim both concluded that someone had entered through the kitchen window. The victim told the officer that when he got home a neighbor told him three males were at his house, and she pointed him in their direction. The victim did not tell the officer that he saw the three males walking out of his house. The officer understood him to mean that he came into the house when he got home, saw the ransacked bedrooms, and then followed the three males. The victim also said he could not remember whether he had locked the front and back doors. But he was nervous and overexcited when he was talking to the officer, and they spoke for only about five minutes at the detention and about 10 minutes at the house. Furthermore, the victim did not seem educated, and he spoke an unusual Mexican dialect the officer did not fully understand.

The victim also testified that there were two trailers behind his house that were rented out by his landlord. At the time of the burglary, one person was renting one of the trailers. Like the victim and his nephew, the trailer tenant was also employed. There

were people who went to the back of the victim's house on a regular basis.[3] On average, about five people visited every day to see the trailer tenant. They did not come in the victim's house, and the trailer tenant did not have access to the house. The trailer tenant also had a female guest who visited him.

The victim's next-door neighbor testified that at about 3:00 p.m., she was in her front yard with her granddaughter. The neighbor looked into the victim's back yard and noticed a lady sitting under a tree in front of the trailers, which were a distance from the victim's house. Then the neighbor saw the three males enter the victim's driveway, approach the victim's front door, and then walk to the back of the house. They had nothing in their hands when they arrived. She was not able to see them when they were in the back of the house. Then she saw the lady walk down the driveway from the back and leave. After that, a van arrived dropped off a man who walked on the driveway to the back. It was not unusual to see people coming and going. At this point, the three men walked away from the house with a television and some kind of appliance. As they walked out of the house, the truck carrying the victim and his coworker arrived. The truck immediately pulled back out of the driveway and followed the three men who were by then on the street.

When an officer showed the neighbor a six-pack photographic lineup, she was unable to identify any of the males because she had not seen their faces. The neighbor did not tell the officer she saw people going in or out of the house. And the officer did not know about the trailer tenant, the lady by the trailer, or the van that pulled up. If he had, he would have investigated these facts.

---

**3**     When defense counsel asked the victim if there was a person named Javier living with him, he answered, "It's me." He was known as Javier and people normally called him that.

DISCUSSION

## I.    Additional Facts

On June 27, 2012, during motions in limine, the prosecutor informed the trial court he had just learned that the local police had executed a search warrant at the victim's house the previous weekend. The affidavit in support of the search warrant stated that the officer affiant had learned from various sources that a person named Javier was involved in sales of methamphetamine from his residence (the victim's house). The officer had observed a man leaving the house after a short visit. When confronted by the officer, the man said he had been purchasing small quantities of methamphetamine from Javier at the house for several months. The man said Javier was a field worker who sold methamphetamine to his coworkers. The man agreed to complete two controlled purchases from Javier. On both June 15 and 16, 2012, the man gave Javier a $20 bill in exchange for a plastic baggie of white powder containing methamphetamine. During the second buy, the officer observed another man enter and exit the house. When confronted, this man also admitted buying a small baggie of methamphetamine. Several days later, however, when police executed the search warrant at the victim's house, they found no contraband and made no arrests.

At trial, Cordova's defense counsel attempted to cross-examine the victim regarding information in the search warrant. As noted above, the victim admitted he was Javier, but the court interrupted further questioning.

Outside the presence of the jury, the trial court explained it was concerned about violating the victim's Fifth Amendment right against self-incrimination because the affidavit stated that a person named Javier who lived at the residence might be involved in sales of methamphetamine.

Cordova's defense counsel argued that immoral or dishonest acts like drug dealing could be used to impeach the victim and show that he was untruthful about the facts of this case. Counsel argued there was reason to believe that someone else could have

committed the burglary as payback for a bad drug deal and left the televisions stashed behind the house. In that case, defendants merely took property that had already been removed from the house. Defendant's defense counsel joined in the arguments. The prosecutor responded that the arguments were based on speculation because there was no concrete evidence that the victim was involved in drug sales; the information came only from a probable cause affidavit attached to a search warrant.

The court explained it would allow evidence that people resided in the trailers directly behind the victim's house and had access to that area. Citing Evidence Code section 352, the court said it was concerned about confusing the jury and litigating whether the victim was dealing drugs. Cordova's defense counsel stressed that the victim had only now stated that he saw the three males leaving his house with his property. Counsel argued that defendants' right to fully cross-examine the victim outweighed any concern about undue consumption of time. The court noted that no contraband had been found during the search. Pursuant to Evidence Code section 352, the court ruled that it would not allow questioning of the victim regarding drug use or drug sales.

On appeal, defendant contends he should have been allowed to cross-examine the victim about his alleged drug sales to support a third party culpability theory that someone other than the three males removed the televisions from the house and to impeach the victim's credibility with a crime of moral turpitude. If the victim had denied selling drugs, the defense was prepared to present testimony of the officer affiant regarding the investigation.

Defendant argues that exclusion of the evidence deprived him of a partial defense and denied him a fair trial. He asserts that the evidence of any entry into the house was weak. The victim's testimony that he saw the three males exiting his house was of questionable credibility, and evidence of his drug dealing would have further eroded his credibility and likely raised additional doubt as to whether defendant was guilty of burglary rather than merely receiving stolen property.

## II.    Analysis

"Only relevant evidence is admissible.  (Evid. Code, § 350.)  Evidence that raises a reasonable doubt as to a defendant's guilt, including evidence tending to show that another person committed the crime, is relevant.  But evidence that another person had a motive or opportunity to commit the crime, without more, is irrelevant because it does not raise a reasonable doubt about a defendant's guilt; to be relevant, the evidence must link this third person to the actual commission of the crime.  [Citation.]  Evidence that is relevant still may be excluded if it creates a substantial danger of prejudicing, confusing, or misleading the jury, or would consume an undue amount of time.  (See Evid. Code, § 352.)" (*People v. Brady* (2010) 50 Cal.4th 547, 558.)

"'In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under Evidence Code section 352. [Citations.]'  [¶]  In *People v. Hall* (1986) 41 Cal.3d 826 [(*Hall*)], [the Supreme Court] held that 'the third-party evidence need not show "substantial proof of a probability" that the third person committed the act; it need only be capable of raising a reasonable doubt of defendant's guilt.'  (*Id.* at p. 833.)  '[The] holding [in *Hall*] did not, however, require the indiscriminate admission of any evidence offered to prove third-party culpability. The evidence must meet minimum standards of relevance:  "evidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt:  there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime."  [Citation.]'" (*People v. McWhorter* (2009) 47 Cal.4th 318, 367-368.)

In this case, the evidence of third party culpability defendant wished to pursue— that the victim allegedly sold drugs from his house and his drug buyers possibly had an opportunity and a motive (a bad drug deal) to steal from him—provided no link between another person and the actual removal of the televisions and cologne from the house.  It

8.

was purely speculative evidence of mere motive or opportunity and therefore irrelevant and inadmissible as third party culpability evidence.  (*Hall, supra,* 41 Cal.3d at p. 833.)

Furthermore, the evidence was properly excluded under Evidence Code section 352.  A "trial court has discretion to exclude impeachment evidence … if it is collateral, cumulative, confusing, or misleading."  (*People v. Price* (1991) 1 Cal.4th 324, 412.)  Exploration of the victim's alleged drug sales, in the absence of any evidence linking one or more of his drug buyers to the burglary, would have amounted to impeachment on a collateral matter and, as the trial court observed, raised the concerns of holding a trial within a trial.  (See *People v. Quartermain* (1997) 16 Cal.4th 600, 625 [trial court did not abuse discretion by excluding impeachment on collateral matter].)  "[I]mpeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present.  Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value."  (*People v. Wheeler* (1992) 4 Cal.4th 284, 296-297, fn. omitted.)  "[T]he consumption of time and the risk of jury distraction were not justified by the marginal probative value of the proffered evidence.  Nor, contrary to defendant's assertion, was the evidence of such probative strength that its exclusion violated his constitutional right to present a defense.  Application of the ordinary rules of evidence, such as Evidence Code section 352, generally does not deprive the defendant of the opportunity to present a defense [citation]; certainly the marginal probative value of this evidence does not take it outside the general rule."  (*People v. Snow* (2003) 30 Cal.4th 43, 90; see also *People v. Hayes* (1999) 21 Cal.4th 1211, 1266 & fn. 15 [disallowing impeachment of prosecution witness on collateral matter did not restrict defendant's right to confrontation and cross-examination].)  The court's discretion under Evidence Code section 352 "empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues."  (*People v. Wheeler, supra,* at p. 296.)

Here, the trial court analyzed the evidence under Evidence Code section 352 and determined it was likely to confuse the jurors and require a trial within a trial to litigate whether the victim actually sold drugs because the search of his house produced no evidence of drug sales. The probative value of the evidence to show third party culpability was extremely weak and its value to impeach the victim was on a collateral matter.

We conclude that the trial court's rulings excluding evidence that the victim may have been involved in drug sales did not constitute an abuse of discretion or violate defendant's constitutional rights. (*People v. Brady, supra,* 50 Cal.4th at p. 558 ["We review for an abuse of discretion a trial court's exclusion of evidence."]; see *People v. Gonzales* (2012) 54 Cal.4th 1234, 1261 ["the exclusion of weak and speculative evidence of third party culpability does not infringe on a defendant's constitutional rights"].)

## **DISPOSITION**

The judgment is affirmed.