Filed 6/2/14  P. v. Guerrero CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ABRAHAM E. GUERRERO,<br><br>  Defendant and Appellant. | B248102<br><br>(Los Angeles County<br>Super. Ct. No. PA061047) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dalila Corral Lyons, Judge.  Affirmed.

Leonard Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Abraham E. Guerrero of one count of attempted murder, a violation of Penal Code sections 664/187, subdivision (a)[1] (count 1) and one count of mayhem in violation of section 203 (count 3).  With respect to both counts, the jury found that defendant personally and intentionally discharged a firearm causing great bodily injury to the victim within the meaning of section 12022.53, subdivision (d).

The trial court sentenced defendant to the midterm of seven years in count 1 plus 25 years to life for the firearm enhancement for a total sentence of 32 years to life on that count.  The trial court stayed a midterm sentence of four years plus a 25-years-to-life firearm enhancement in count 3 pursuant to section 654.

Defendant appeals on the ground that the trial court committed prejudicial error by not admitting evidence of third party culpability.

## FACTS

**Prosecution Evidence**

On February 16, 2008, Angel Arroyo, who was 17, went to a surprise birthday party for a soccer teammate of his, Giovanni Ochoa.  He was accompanied by his twin sister, Angelica, his nephew, Joshua, and a friend, Yesenia.  Angel noticed that a young man named Cees was at the party, which was held in a backyard.  Cees and defendant were standing against a wall.  Angel told Joshua and Angelica that he had been in an altercation with Cees's younger brother.  Angel kept watch on Cees and defendant and saw that other men joined them until there were four or five of them.  These men did not mingle with the others at the party.  One of these men was Black.

As Angel began dancing with Yesenia, he was punched from behind.  He turned and saw Cees, and they began fighting.  The rest of Cees's companions tried to join in, and Ochoa's uncle, Emmanuel Lopez, intervened.  Lopez pushed Cees toward a wall, and Angel saw defendant trying to pull a gun out of his waistband.  Angel saw defendant

---

[1]     All further references to statutes are to the Penal Code unless stated otherwise.

point the gun and a spark. Angel started crawling away and then jumped over a gate to the neighbor's yard.

Lopez recalled that when he grabbed one of the fighters and pushed him off, he felt something hit him in his left eye. He then saw blood coming out. Paramedics took him to the hospital where he underwent surgery. He lost his left eye as a result.

Angel and his friends had taken pictures during the evening. They found a picture that included the shooter. Angel called police and met with them the following day. Angel pointed out the shooter in the picture and told police the shooter attended Arleta High School, as did Cees. Angel identified a photograph of Cees as the person who hit him from behind. Approximately three weeks after the party, police showed Angel a photographic lineup. He identified defendant as the person who pulled a gun.

Joshua recalled that Ochoa's uncle ran into the man who had punched Angel and tried to break up the fight. Joshua saw defendant struggling to reach into his waistband and pull out something. Joshua did not see a gun, but he dropped to the ground and crawled away with Angel because he feared it was a gun. He identified defendant to police as the person he saw pulling something from his waistband.

Angelica recalled that after Cees hit Angel and they began fighting, she ran toward the fight to try to help her brother. Then she heard a gunshot and ducked. She turned around to see where the shot came from and saw defendant running away with a gun. She did not see him point the gun or pull the trigger. She saw defendant later at Arleta High School and told police. She chose defendant's photograph from a photographic lineup. She recalled seeing a Black male among those who rushed into the fight. She had also seen him around after school. He did not go to Arleta High School, and he looked "older."

Defendant was arrested on March 6, 2008. He and his companion ran when they saw police approaching.

A bullet fragment and casing were found at the scene of the shooting. The round and the casing indicated the firearm could have been a .22-caliber or a .25-caliber weapon. The bullet fragment found at the scene fit inside the casing, and Detective

3

James Edwards, who investigated the shooting, believed the fragment came from that casing, which was a .25-caliber casing. The casing was entered into a database and there was a possible match with an incident that occurred after the February 16, 2008 shooting, at a time when defendant was in jail.

**Defense Evidence**

Defendant presented no evidence on his behalf.

## DISCUSSION

### I. Defendant's Argument

Defendant contends the trial court erred and deprived him of his Sixth and Fourteenth Amendment rights to a trial by jury, due process, and a fair trial by not admitting evidence of third party culpability. He argues that the judgment must be set aside and the matter remanded for a new trial.

### II. Proceedings Below

Prior to Detective Edwards's testimony, an Evidence Code section 402 hearing was held regarding defense counsel's desire to introduce evidence about an individual known as "Blackie," who was identified by Angelica as being at the party. Blackie was later identified as Rodney Hansford by Detective Edwards.[2] Defense counsel stated that Hansford was reported to have run out with other people after the shooting. Counsel wanted to ask the detective about Hansford's arrest approximately 11 days after the shooting. He wanted to ask if the casing and fragment found at the scene were sent out for testing and whether the gun recovered from Hansford matched the casing. Counsel wished to explore whether the gun Hansford had after the shooting could have been the gun used at the party.

The prosecutor did not object to questions regarding whether the casing or bullet were submitted for analysis. The prosecutor argued, however, that the firearm Hansford had when arrested was a .22-millimeter firearm, and the casing from the scene was a .25-

---

[2]    We refer to Blackie by his true name for the remainder of the discussion.

millimeter casing. Thus, the whole issue of third party culpability was tenuous. No one "even close to meeting [Hansford's] description" was seen firing a gun at the party. The fact Hansford was arrested 10 days later with a firearm that could not be matched to the crime scene was completely irrelevant.

Defense counsel pointed out that, according to the detective's testimony at the preliminary hearing, the casing found at the scene was a .25-caliber casing, but the round at the scene was reportedly a small grade consistent with being either a .25-caliber or a .22-caliber bullet. Counsel wished to ask about the bullet. Counsel added that the prosecutor's case rested on identifications, and counsel believed the circumstances at the party left a lot of room for misidentification.

The court asked if counsel had any evidence other than his client's possible testimony that Hansford was the shooter. Counsel stated that his proposed evidence consisted of Hansford's possession of a .22-caliber weapon and the evidence of the small caliber round at the scene, along with any evidence of testing.

During the hearing, Detective Edwards confirmed that Hansford was identified as being at the party. He testified that he could not determine if the bullet fragment found at the scene was fired from a .25-caliber firearm or a .22-caliber firearm. The bullets are somewhat similar. Both .25-caliber and .22-caliber bullets would fit inside a .25-caliber casing. With respect to testing, the casing was entered into a database and its head stamp was noted. The .22-caliber gun found on Hansford when he was arrested was test-fired, and the casings were to be entered into the appropriate database.

After hearing argument, the court agreed with the People that the evidence attempting to connect Hansford to the shooting was irrelevant. The court stated it had considered the factors set out in Evidence Code section 352. The court found that any evidence regarding the analysis of the weapon or the casing and round was admissible, but there could be no questions regarding Hansford's subsequent arrest. There was no evidence to connect him to the shooting.

## III. Relevant Authority

"'[T]he trial court is vested with wide discretion in determining relevance.' [Citation.]" (*People v. Sanders* (1995) 11 Cal.4th 475, 512.) A trial court's error in excluding evidence of third party culpability is reviewed under the test set out in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) As a general matter, the application by the trial court of the ordinary rules of evidence does not impermissibly infringe on the accused's right to present a defense. (*Ibid*.)

The defense is entitled to present "evidence of third-party culpability that tends to exonerate a defendant." (*People v. Hall* (1986) 41 Cal.3d 826, 831 (*Hall*).) "[S]uch evidence is admissible only if it constitutes 'substantial evidence tending to directly connect that person with the actual commission of the offense.' [Citations.]" (*Ibid*.; see also *People v. Bradford* (1997) 15 Cal.4th 1229, 1325.) The evidence must be capable of raising a reasonable doubt about the defendant's guilt. (*Hall*, at p. 833.) This rule does "not require that any evidence, however remote, must be admitted to show a third party's possible culpability. . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Ibid*.; see also *People v. Panah* (2005) 35 Cal.4th 395, 481; *People v. Sandoval* (1992) 4 Cal.4th 155, 176; *People v. Pride* (1992) 3 Cal.4th 195, 237-238.) The admission of such evidence remains subject to the general requirement of relevance and the trial court's discretion to exclude unduly prejudicial or confusing evidence under Evidence Code section 352. (*People v. Bradford*, at p. 1325.)

## IV. No Abuse of Discretion or Error

We conclude defendant's showing was not capable of raising a reasonable doubt, and therefore the trial court did not abuse its discretion. Moreover, the probative value of the evidence in question was substantially outweighed by the potential for prejudice, confusion of the issues, and misleading of the jury. Accordingly, the exclusion of the evidence did not infringe on defendant's constitutional rights to trial by jury, a fair trial, or due process. (*People v. Sandoval*, *supra*, 4 Cal.4th at p. 176.)

6

As noted, the rule set out in *Hall* does ""“not require that any evidence, however remote, must be admitted to show a third party's possible culpability.”"" (*People v. Panah*, *supra*, 35 Cal.4th at p. 481.) In the instant case, there was no evidence precluded by the court that rose to the level of direct or circumstantial evidence linking Hansford to the actual perpetration of the crime. The only evidence connecting Hansford to the shooting was his presence in the group that joined Cees and defendant at the party. Contrary to defendant's assertion, Angelica did not testify that she saw Hansford running away with the others. The only mention of Hansford running away was made by defense counsel at the Evidence Code section 402 hearing.

On the other hand, defendant had been with Cees all night long. The two of them had watched Angel and had in turn been watched by Angelica and Joshua after Angel told them about his problems with Cees's younger brother. Angelica "kept an eye on" Cees and defendant and observed defendant inside the house when he went to use the bathroom and when he exited the bathroom. Both Angel and Joshua saw defendant reaching for his waistband immediately before the shot. After hearing the shot, Angelica looked to see where it came from and saw defendant running away with a gun in his hand. Although she did not tell this to the police immediately after the shooting, during cross-examination the jury was made aware of her failure to do so.

The witnesses did not know defendant's name, but they were able to identify him in photographs they took during the party. Not knowing his name does not equate to not being able to identify him. They knew he was the person they had seen with Cees and who reached for his waistband, and Angelica knew he was the one she saw running with the gun. Angelica later saw defendant at Arleta High School and told police.

Hansford was not arrested until 10 or 11 days after the shooting. Although he was found with a gun, that gun was not shown to have any connection with Lopez's shooting. Hansford's gun was a .22-caliber weapon, and the gun used to shoot Lopez was only possibly a .22-caliber gun. It could have been a .25-caliber gun, and the bullet fragment that was discovered at the crime scene fit into the .25-caliber casing from the scene.

Defendant points to the circumstances of the identifications made by the witnesses in this case. He notes that none of the witnesses identified defendant immediately after the shooting. They only spoke of a man in a hoodie. He asserts that the identifications took place only after Angel, his sister, and possibly Joshua got together and discussed the situation. According to defendant, the evidence that defendant was the shooter was suspect.

The facts surrounding the identifications were amply presented to the jury by means of effective cross-examination by defense counsel. Counsel utilized all of the ambiguities in his closing argument as well. He argued that Angel, Angelica, and Joshua knew whose photograph they were going to select from the six-pack before they looked at it, because they had already decided it was defendant. He argued that it was dark at the party and the lighting was poor. There were perhaps 100 people there, the music was loud, and things happened very quickly. He demonstrated to the jury that the photograph taken by the witnesses was not clear, and it was difficult to tell who the person with the hood was. Moreover, the jury was properly instructed on the factors to consider in evaluating a witness's testimony and, in particular, on the factors that may affect an eyewitness's ability to make an accurate identification. (CALCRIM Nos. 226, 315.)

Considering all of these circumstances, it is clear that the evidence of Hansford's arrest and the gun he possessed that *perhaps* could have been the same *type* of gun used in the shooting was too speculative to merit introduction at trial as evidence of third party culpability. Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence that produces speculative inferences, such as the inference that Hansford was the shooter despite any significant evidence to support it and the strong eyewitness testimony to the contrary, is irrelevant evidence. (*People v. Babbitt* (1988) 45 Cal.3d 660, 682.)

With respect to federal constitutional error, the United States Supreme Court has held that a defendant is entitled to present "a complete defense" (*California v. Trombetta* (1984) 467 U.S. 479, 485), but that right is not unlimited (*United States v. Scheffer*

8

(1998) 523 U.S. 303, 308).  The California Supreme Court has held that "'[c]ourts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice.  [Citations.] . . . .  [T]his principle applies perforce to evidence of third-party culpability . . . .' [Citation.]"  (*People v. Cudjo*, *supra*, 6 Cal.4th at p. 611.)  Admission of third party culpability evidence is "based upon its relevance and weight as against its capacity to confuse, delay or prejudice."  (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1174.) The trial court here expressly stated it had considered the evidence under all of the factors in Evidence Code section 352 when making its ruling.

We agree with the trial court that the evidence at issue here both lacked relevance and possessed the capacity to confuse the issues and mislead the jury.  Defendant's constitutional claims are without merit, and it was not reasonably probable defendant would have received a more favorable verdict had the trial court permitted defense counsel to cross-examine Detective Edwards regarding Hansford's arrest and the firearm he possessed when arrested.  (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)  The trial court properly excluded the evidence.

### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:

ASHMANN-GERST, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.