Filed 3/25/21  P. v. Vang CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090082 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE012961) |
| v. | |
| STEVE VANG, | |
| Defendant and Appellant. | |

Defendant Steve Vang was convicted of multiple counts related to burglary and the sexual assault of a child during the commission of one of the burglaries.  On appeal, he contends the trial court erred in excluding evidence that unknown male DNA was found on the child victim's underwear.  We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged in count one with committing a lewd and lascivious act against E. (Pen. Code, § 288, subd. (a))[1] during the commission of a burglary (§ 667.61, subds. (d)(4), (e)(2), & (j)(2)); in count two with the assault of E., with the intent to commit a specified sex offense (§ 220, subd. (b)); in count three with the burglary of E.'s residence with the intent to commit a lewd and lascivious act on a child (§ 459); in count four with the burglary of the residence of L.D. (§ 459); in count five with driving of the vehicle of L.D. on June 19 through 20, 2017 (§ 10851, subd. (a)); and in count six with burglary of the residence of B.D. (§ 459). The information further alleged that defendant had suffered a prior conviction for a strike offense (§ 667, subd. (a)). Defendant pleaded not guilty to all counts and denied the enhancement allegation. The trial court subsequently granted the prosecutor's motion to amend the information to allege an occupied residence enhancement as to counts three and four. (§ 667.5, subd. (c)(21).)

The following evidence was adduced at trial. On October 19, 2016, a man entered a locked home, which was temporarily vacant while the resident, B.D, took her son to school. When she returned, she found the man in her son's room. In her son's room, the window was open, the screen was broken, and money, jewelry, and a PlayStation were missing. A deputy lifted two latent prints from the inside of a bedroom windowsill, which matched defendant. B.D. recognized defendant from two prior occasions when she saw him peering through her bedroom window and identified defendant as the burglar from a police photo.

E. was born in September 2004. On the afternoon of June 14, 2017, E.'s mother went to the store to get some things for her sixth grade graduation celebration. The doors to the house were locked when E.'s mother left to go to the store. E. was sitting on her bed playing on her tablet when she heard a noise and a man walked into her room. The

---

[1] Undesignated statutory references are to the Penal Code.

2

man briefly left her room, closing the door, and E. could hear him going through drawers. E. was looking through her cell phone for her mother's number when the man came back into her room. He pushed her onto her bed, placed himself on top of her, held her down, and rubbed her vagina over her underwear, which was painful because he pushed the underwear inside her. The assault lasted for about five minutes. E. hit him, screamed, and said she would call 911, and eventually he left through a window, taking her phone. E. then ran to the home of her neighbor, as the man left through the window and jumped over a fence. The neighbor called 911 and E. called her mother. E. described the man as Chinese and possibly White and Mexican. E. identified defendant as the perpetrator in a police photo lineup and in court. E.'s mother found a cell phone she did not recognize in her back yard by a fence. A photo on the phone's wallpaper was of defendant and a woman.

The prosecution presented a cell phone extraction from the phone found in E.'s back yard (AK-1), and an extraction from a cell phone found in possession of defendant at the time of his arrest (AK-2). AK-1 had a user account named VangStevieB@X.com with Facebook. That phone contained web search histories from May 31, 2017, to June 14, 2017. The searches included about 725 of a pornographic site called xvideo.com. From June 1 through 14, 2017, the searches of xvideo.com included terms like "molested hostage," "beautiful girl abducted and gang banged interracial," "first anal experience, my schoolgirl daughter," "abducted teen sex," "teens abducted for sex," "abduction helpless fuck," "home invasion sex," "apartment abduction," and "scared teenager destroyed by a robber."

AK-2 had two user accounts, JacksonPineda161@X.com and VangStevieB@X.com. The latter was created on Facebook on July 10, 2017. Earlier searches and messages prior to June 2017 were in Spanish. On June 14, 2017, there were about 85 searches on xvideo.com, some of which involved search terms like "teens or daughters," from about 12:49 a.m. to about 10:49 a.m.

3

Police also swabbed the phone found in E.'s backyard and found a mixture of DNA. After she received the results of the DNA mixture, a criminologist compared those DNA profiles to defendant's reference sample. A likelihood ratio expresses how much more likely it would be to obtain the DNA results if the person of interest is a contributor or a random, unrelated person is the contributor. At trial, the criminologist opined that it was at least $3.51$ times $10$ to the 12th times more likely to obtain these DNA results if defendant and two random unrelated individuals were contributors, than if three random unrelated individuals were contributors to the mixture. Defendant's DNA profile matched as the 69 percent genetic contributor.

Five days after E.'s assault and 0.3 miles away from E.'s home, on June 19, 2017, L.D. went to bed with her kitchen window closed and the screen in place, but when she awoke the next morning, the window was open, the screen was off, and her purse, keys, and laptop were missing. She called 911. Four latent fingerprints from the outside of the kitchen window matched the known prints of defendant.

Following the trial, the jury found defendant guilty of all six counts and found the enhancement allegations to be true. Following a bifurcated bench trial, the trial court found the prior conviction allegation true. The court sentenced defendant to serve a doubled term of 50 years to life in prison on count one, with this indeterminate term to be served consecutively to an aggregate determinate term of 22 years four months.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court erred in excluding the evidence of DNA belonging to an unknown male found on the exterior of E.'s underwear, claiming that it was relevant and not speculative in supporting a third-party culpability theory. We disagree.

4

# I

## *Background*

Prior to trial, the prosecution moved in limine to exclude evidence of third-party culpability, specifically the presence of an unknown male DNA profile that was found on the exterior of E.'s underwear. The defense opposed the motion. The trial court excluded the DNA evidence of third-party culpability, without prejudice to revisiting the issue if the defense could establish other evidence linking a third person to the perpetration of the crime. The court reasoned, under Evidence Code section 352: "[T]he probative value of the DNA testing exclud[ing] the Defendant is very probative, but the probative value of the DNA pointing to a third person is very, very low . . . . You -- we really can't identify who the person is and under what circumstances or what conditions and the timing of when that DNA got there. [¶] . . . [¶] [A]nd then when you look at the effect of confusing issues or misleading the jury if a third-party culpability defense is allowed, what it requires with no evidence at all is a jury to completely speculate as to who this unidentified third person is, total speculation on how it got there, on when it got there. It's just total speculation. There's no motive. There's no opportunity. There is no other evidence at all. [¶] The only evidence we have is that the underwear contained some unidentified third party's DNA. And in my opinion, that is not sufficient under [*People v. Hall* (1986) 41 Cal.3d 826, 829 (*Hall*)] or any of the cases coming thereafter to support a third-party claim. . . . And the risk is, again, confusion of the issues or misleading the jury and forcing the jury to start speculating over things it has no business speculating over and drawing conclusions on speculation. So the fact that the Defendant's DNA was not on the underwear can come in, pointing to a third person or using third-party culpability defense cannot."

The defense subsequently moved the court to reconsider its ruling on third-party culpability evidence. Following argument, the trial court again denied the motion, explaining that the motion was "way too vague, speculative, ambiguous, and way too

5

lacking in both quality and quantity" for the court to find that a third-party culpability defense could have been presented to the jury.

## II

### *Analysis*

"[C]ourts should . . . treat third-party culpability evidence like any other evidence: if relevant it is admissible ([Evid. Code,] § 350) unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion ([Evid. Code,] § 352)." (*Hall, supra*, 41 Cal.3d at p. 834.) To be relevant and admissible, however, "evidence of the culpability of a third party offered by a defendant to demonstrate that a reasonable doubt exists concerning his or her guilt, must link the third person either directly or circumstantially to the actual perpetration of the crime. In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under Evidence Code section 352." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)

These principles do "not . . . require the indiscriminate admission of any evidence offered to prove third-party culpability." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1017; *Hall, supra*, 41 Cal.3d at p. 833 ["we do not require that any evidence, however remote, must be admitted to show a third party's possible culpability"].) Rather, "[u]nder *Hall* and its progeny, third party culpability evidence is relevant and admissible only if it succeeds in 'linking the third person to the actual perpetration of the crime.' " (*People v. DePriest* (2007) 42 Cal.4th 1, 43 (*DePriest*).) "Without this link, such evidence is irrelevant and cannot be admitted." (*People v. Ghobrial* (2018) 5 Cal.5th 250, 283; see *People v. Lewis* (2001) 26 Cal.4th 334, 373 ["The trial court reasonably found the evidence was too speculative to be relevant"].) "Evidence that another person had 'motive or opportunity' to commit the charged crime, or had some 'remote' connection to the victim or crime scene, is not sufficient to" establish the required link. (*DePriest,* at

6

p. 43.)  Speculative inferences " 'derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact.' " (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.)

We review a trial court's exclusion of third-party culpability evidence for an abuse of discretion.  (*People v. Ghobrial, supra*, 5 Cal.5th at p. 283.)  After doing so here, we conclude the court did not abuse its discretion in concluding the evidence was too speculative to link a third party to the commission of the crime.  (See *DePriest, supra*, 42 Cal.4th at p. 43.)  In *Ghobrial* at page 256, the defendant was convicted of murdering a 12-year-old boy.  Unknown sperm was found in the victim's rectal area.  (*Id.* at p. 280.)  The defense sought to introduce testimony of Oscar Leon about a night he spent with the victim to create the inference that a man other than the defendant could have been the source of the unknown sperm.  (*Id.* at p. 282.)  Even though the defense identified a particular suspect, the trial court excluded the evidence as irrelevant.  (*Ibid.*)  The trial court found that a jury could not reasonably infer if the defendant molested the victim or not based on the victim's earlier interactions with other adults.  (*Ibid.*)  Further, the court noted, "any such inference would be speculative because Leon's [known] interaction with [the victim] had occurred a month before [the victim's] death."  (*Ibid.*)  Our Supreme Court ruled that the trial court did not abuse its discretion in excluding the testimony, because the evidence raised no more than a " 'possible suspicion' " of a third party's guilt.  (*Id.* at p. 283, citing *Hall, supra*, 41 Cal.3d at p. 832.)

Here, the trial court did allow testimony that defendant's DNA was *not* on the underwear.  The proffered evidence was simply that there *was* unknown male DNA on the underwear, which could have been deposited there in any number of ways at any number of times.  Defendant contends:  "Common sense reflects that male DNA typically would not be found on the underwear of a 12-year-old girl."  The assertion is wholly speculative.  For example, there was testimony that E. and her mother lived with her brother and her mother's boyfriend.  Either of these males could have deposited DNA

7

while handling laundry. Defendant acknowledges this possibility but claims "the prosecution presented no evidence that a male did [E.'s] laundry." It was defendant's burden, however, to provide an offer of proof " 'linking the third person to the actual perpetration of the crime.' " (*DePriest, supra*, 42 Cal.4th at p. 43.) He failed to meet his burden. The proposed evidence of unknown male DNA found on the exterior of the underwear, with no facts that it was connected to the crime, was not "capable of raising a reasonable doubt" of defendant's guilt. (*Hall, supra*, 41 Cal.3d at p. 833.) As the trial court discussed, defendant failed to offer any direct or circumstantial evidence linking a third person to the actual commission of the crime. The presence of unknown DNA merely raised an inference that another male touched E.'s underwear at some point. Thus, the trial court did not err in finding the evidence too speculative to be relevant. (*People v. Lewis, supra*, 26 Cal.4th at p. 373.)

Even assuming for the sake of argument that the trial court abused its discretion by refusing to admit the proposed third-party culpability evidence, any error was harmless.

In assessing whether the exclusion of evidence was prejudicial, the applicable standard of review is generally under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Babbitt, supra*, 45 Cal.3d at p. 688.) Defendant contends that the error rose to a constitutional dimension and the proper standard is that of *Chapman v. California* (1967) 386 U.S. 18. We conclude that evidence is harmless under either standard. The evidence of defendant's guilt was overwhelming, and we are convinced beyond a reasonable doubt that the introduction of the disputed evidence would not have changed the result.

As we have set forth in detail above, police found defendant's phone along the assailant's escape route. Defendant burglarized multiple homes located less than three miles of each other. He searched a porn site for explicit videos similar to E.'s assault on both the phone found on his person and the phone found in E.'s yard, including searches conducted only minutes before he entered her room. Further, E. twice identified

8

defendant, once from a photo lineup and a second time at trial.  She testified that she was able to see his face when he was on top of her.

In sum, the circumstances of these crimes point squarely at defendant--and no one else--as E.'s assailant.  At best, the excluded evidence would have suggested the possibility that some other male touched E.'s underwear at some point in time.  There was absolutely no evidence to support a finding that another man resembling defendant was even in E.'s vicinity during the relevant time period, much less that he broke into E.'s residence, walked into her room, sexually assaulted her, and dropped *defendant's* cell phone at the scene.  In light of the overwhelming evidence pointing to defendant, even assuming error that we have not found, excluding the unidentified DNA evidence was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.


/s/<br>
Duarte, J.

We concur:


/s/<br>
Mauro, Acting P. J.


/s/<br>
Krause, J.

9