Filed 4/7/14  P. v. Saucedo CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EDWIN MANRIQUEZ SAUCEDO,<br><br>    Defendant and Appellant. | F064722<br><br>(Super. Ct. No. VCF257429)<br><br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Before Kane, Acting P.J., Poochigian, J. and LaPorte, J.†

† Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

-ooOoo-

Edwin Saucedo appeals from a conviction under Health and Safety Code section 11378 for possession of methamphetamine for sale. He claims the judgment must be reversed because he was denied the opportunity to present evidence of third party culpability. Alternatively, he contends the excluded evidence had strong impeachment value and should have been admitted for that purpose. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2009, Porterville police officers executed a search warrant at a house occupied by Saucedo and another man named Alejandro Sanchez. The search yielded three bags of methamphetamine, three digital scales containing powdery residue, packaging material, and approximately $500 in cash. Saucedo and Sanchez were both arrested on suspicion of narcotics possession and sales, but Sanchez was eventually released without charges.

On November 16, 2011, the Tulare County District Attorney filed an amended information charging Saucedo with possession of methamphetamine for sale. Saucedo was also accused of having suffered two prior felony convictions for possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a); Pen. Code, § 1203, subd. (e)(4).) The matter was tried before a jury in February 2012.

**Motion in Limine re: Prior Convictions of Alejandro Sanchez**

Prior to trial, defense counsel signaled her intention to introduce evidence of Alejandro Sanchez's prior arrests and convictions for methamphetamine-related offenses. The convictions arose from incidents which occurred in May 2008 and July 2009. The prosecution filed a motion in limine to exclude any information concerning Sanchez's criminal background, noting the evidence would have no impeachment value since he was not scheduled to testify in the case.

Defense counsel opposed the motion, arguing the prior convictions could be used as evidence of third party culpability. Saucedo's attorney further claimed the evidence

2.

would serve to "undermine[] the reliability of the police department's work in this case." The latter argument focused on the fact that Sanchez was not questioned following his arrest, purportedly because the investigating officer could not converse with him in Spanish. The defense believed this was a pretextual excuse for the Porterville Police Department's alleged negligence in releasing a suspect who was known to be "a drug dealer in methamphetamine."

The trial court granted the prosecution's motion. It found Sanchez's criminal convictions before and after the subject incident constituted impermissible propensity evidence under Evidence Code section 1101. The court also expressed concern regarding the likelihood that jurors would be confused, distracted, and/or misled by evidence of Sanchez's prior arrests and criminal history.

**Prosecution Evidence**

Police arrested Saucedo during a search of a residence located on East River Avenue in the City of Porterville. The two-bedroom home had been under surveillance as part of an ongoing narcotics investigation. There was no evidence to confirm Saucedo lived in the house, but he had been seen exiting and entering the home one day prior to his arrest. Police also found photocopies of a permanent resident card and a Social Security card in one of the bedrooms, both in the name of "Edwin Manriquez Saucedo."

Detective Chris Contreras testified as the investigating officer. He and seven or eight additional officers and detectives from the Porterville Police Department participated in the execution of a search warrant at the target residence. The search team found Saucedo and Sanchez together in a small room which Detective Contreras referred to as the northeast bedroom. Police frisked Saucedo and found a digital gram scale in the front pocket of his pants. Two additional scales were found in close proximity to both suspects. All three scales contained traces of a white powdery residue.

A search of the northeast bedroom uncovered three plastic "bindles" of methamphetamine weighing 1.29, 1.43, and 1.62 grams, respectively. Two of the bindles

were concealed inside of an eyeglasses case that was lying on the floor. The third bindle was located at the bottom of a trash can underneath a box of plastic sandwich bags. Approximately $500 in cash was found elsewhere in the house.

Detective Stephanie McElroy testified as a narcotics expert. In her opinion, the totality of the evidence was indicative of drug possession for sale rather than personal use. She based her opinion on several factors, including the presence of packaging materials, i.e., plastic sandwich bags, in the bedroom. In her experience, it is uncommon for a person who is not involved in drug sales to keep a box of sandwich bags in the bedroom of a home. Other supporting factors included the separate packaging of similar quantities of methamphetamine, the amount of cash found at the scene, and the presence of digital scales with residue on them. The residue was not laboratory tested, but two of the investigating officers believed the substance was methamphetamine based on their training and experience in identifying illegal drugs.

**Defense Evidence**

Saucedo's trial counsel attempted to portray him as a mere buyer and user of methamphetamine, and suggested the actual drug dealer was Sanchez or some other third party. This strategy relied on the lack of evidence to show Saucedo's dominion and control over the premises. With the exception of the photocopied identification cards bearing his name, there was no proof of Saucedo's connection to the house. Utility bills found inside the northeast bedroom were addressed to a "Maria Ruiz."[1]

Police photographs taken during the search revealed a number of items which could have potentially pointed to other suspects, but were never seized. These items

---

[1] The defense successfully excluded evidence of a relationship between Saucedo and Maria Ruiz, who was allegedly pregnant with Saucedo's child at the time of his arrest. The jury was also unaware that the search warrant for the house had been issued as a result of a "controlled buy" arranged by police with a confidential informant who reported that a man named "Edwin" had sold him methamphetamine at that location.

included a wallet, a California identification card, a sheet of address labels, a traffic citation, car keys, computers, and various pieces of mail. The photographs also showed a third individual handcuffed and seated next to Saucedo and Sanchez inside of the residence. The unidentified man had apparently arrived at the house while police were conducting their search, was briefly detained, and then released without arrest.

Detective Contreras acknowledged his failure to question Sanchez about the contraband. This was allegedly due to a language barrier, though no effort was made to interrogate him with the assistance of an interpreter. During the defense case-in-chief, a detective named Brett McGowen testified that he knew Sanchez from prior arrests. Detective McGowen helped secure the perimeter of the residence during the search, but could not recall if he actually saw Sanchez while he was there. Pursuant to its in limine ruling, the trial court struck the testimony about Sanchez's prior arrests and instructed the jury to disregard the information.

As for the digital scale in Saucedo's pants pocket, defense counsel theorized that he had the device with him to confirm the weight of a drug purchase for personal use. The prosecution's narcotics expert acknowledged that the factors supporting her opinions could also be consistent with drug possession for personal use rather than sales.

**Verdict and Sentencing**

The jury returned a guilty verdict. After the verdict was rendered, Saucedo admitted his prior convictions as alleged in the amended information. He subsequently moved for a new trial based on the court's exclusion of evidence regarding Sanchez's criminal history. The motion was denied.

Applying Penal Code section 1170, subdivision (h), the trial court sentenced Saucedo to county jail for a term of three years, with the final year to be served on supervised probation. Various fines and fees were also imposed. This timely appeal followed.

## DISCUSSION

Saucedo's arguments on appeal mirror those advanced by his trial counsel regarding the exclusion of evidence of Alejandro Sanchez's criminal history. The evidence is characterized as being probative of third party culpability and having independent value for impeachment purposes. Saucedo also claims the exclusion of this evidence deprived him of his constitutional right to present a defense and confront witnesses. We address each contention in turn.

A criminal defendant may present evidence of third party culpability if the evidence is capable of raising a reasonable doubt as to his or her own guilt. (*People v. Abilez* (2007) 41 Cal.4th 472, 517 (*Abilez*).) The evidence must directly or circumstantially link a third person to the crime at issue and its use is subject to all applicable restrictions under the Evidence Code. (*Id*. at pp. 502, 517.) A trial court's ruling on the admissibility of third party culpability evidence is reviewed for abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 581 (*Elliott*); *People v. Brady* (2010) 50 Cal.4th 547, 558 (*Brady*).)

In *People v. Hall* (1986) 41 Cal.3d 826 (*Hall*), the California Supreme Court adopted a two-part test for the assessment of proposed third party culpability evidence. First, the trial court must determine whether the evidence is admissible, focusing on its ability to link a third party to the actual perpetration of the crime and to raise a reasonable doubt about the defendant's guilt. (*Hall*, *supra*, 41 Cal.3d at p. 833.) Second, the trial court must evaluate the evidence under Evidence Code section 352.[2] (*Id.* at pp. 834-835.) Evidence that is admissible under the first prong of the analysis may still be excluded if it presents a substantial danger of prejudicing, confusing, or misleading the jury, or consuming an undue amount of time. (§ 352; *Brady*, *supra*, 50 Cal.4th at p. 558.)

---

[2] All further statutory references are to the Evidence Code.

Although *Hall* describes the threshold for admissibility in terms of legal relevance, subsequent cases uniformly hold that third party culpability evidence is subject to exclusion under section 1101, subdivision (a) if it merely establishes a third party's criminal propensity. (*Elliott*, *supra*, 53 Cal.4th at p. 580; *People v. McWhorter* (2009) 47 Cal.4th 318, 372-373 (*McWhorter*); *People v. Lewis* (2001) 26 Cal.4th 334, 372-373; *People v. Davis* (1995) 10 Cal.4th 463, 500-501 (*Davis*).) The use of character evidence is permissible for alternative purposes such as proving motive, opportunity, knowledge, or intent. (§ 1101, subd. (b).) If relevant for no other reason than to show a criminal disposition, such evidence "'does not amount to direct or circumstantial evidence linking the third person to the actual perpetration of the crime.'" (*McWhorter*, *supra*, 47 Cal.4th at p. 373, quoting *Davis*, *supra*, 10 Cal.4th at p. 501.)

Saucedo's trial counsel essentially conceded that the relevance of Sanchez's criminal history, for purposes of third party culpability, was limited to his propensity for dealing drugs. Noting both men were found in the same room where the narcotics were seized, counsel argued the jury would be more likely to conclude Sanchez was the drug dealer, rather than Saucedo, because Sanchez had previously been convicted of transporting and selling methamphetamine.

When confronted with the strictures of section 1101, counsel submitted that the prohibition against criminal propensity evidence is designed to prevent prejudice to a defendant, and does not extend to uncharged third parties. This argument has been rejected by the California Supreme Court and lends no support to Saucedo's position on appeal. (*Davis*, *supra*, 10 Cal.4th at p. 501 ["If the Legislature intended the statute to apply only to evidence of 'other crimes' by a defendant, it could have so provided."].) Like the trial court, we find no relevance in Sanchez's criminal history for purposes of a third party culpability defense other than to show he was likely dealing drugs on the day in question because he had done so at other points in time. Therefore, the evidence did

not satisfy the threshold requirement for admissibility and the court did not err by excluding it pursuant to section 1101, subdivision (a).

We also agree with the court's observation that the facts do not comport with the traditional concept of third party culpability.  The essence of the defense is that "a third person, and not the defendant, committed the crime charged." (*Hall*, *supra*, 41 Cal.3d at p. 832.)  "The sense of *Hall* is that evidence of third party culpability, when admissible, is essentially exculpatory in nature. Therefore[,] evidence of third party culpability [does not] have a tendency to incriminate the accused." (*City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118, 1144 (conc. opn. of Danielson, J.).)  In this case, the evidence supported a theory of joint possession of narcotics for sale by both Sanchez and Saucedo.  Sanchez's prior convictions did not necessarily suggest Saucedo's innocence, and very well may have strengthened the argument that both men were involved in narcotics trafficking.  Saucedo has not cited, nor have we found, any case law allowing the use of criminal propensity evidence to support a third party culpability defense under similar or analogous circumstances.

The next issue is whether the excluded evidence should have been admitted for purposes of impeachment.  Saucedo broadly defines impeachment to mean not only the discrediting of testimony by a particular witness, but also his more global criticism of the "shoddy" investigation conducted by the Porterville Police Department.  Assuming the impeachment value of Sanchez's prior arrests and convictions, the trial court retained discretion to exclude the evidence pursuant to section 352.  (*People v. Riccardi* (2012) 54 Cal.4th 758, 808-809; *People v. Hartsch* (2010) 49 Cal.4th 472, 497 (*Hartsch*).)  "'A trial court's exercise of discretion in admitting or excluding evidence … will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Hartsch*, *supra*, 49 Cal.4th at p. 497.)

In the context of section 352, the danger of undue prejudice includes "the possibility of misuse of the evidence," i.e., "use of the evidence by the trier of fact for a purpose for which the evidence is not properly admissible." (*People v. Hoze* (1987) 195 Cal.App.3d 949, 954; see also, *People v. Cudjo* (1993) 6 Cal.4th 585, 610.) Here, despite the attempt to classify Sanchez's criminal history as impeachment evidence, it is obvious Saucedo's ultimate objective was to create doubt in the minds of the jurors regarding his own guilt by having them focus on Sanchez's historical propensity to commit the same crime. The trial court also expressed legitimate concerns about the potential for juror confusion over the introduction of character evidence relating to the prior convictions of a non-testifying third party, especially since the jury was given the standard instruction under CALCRIM No. 373 not to speculate about whether other people who may have been involved in the crime had been or would be prosecuted. Under either rationale, it cannot be said that the trial court acted in an "arbitrary, capricious, or patently absurd manner" by exercising its discretion to exclude the proffered evidence. Consequently, Saucedo cannot meet his burden under the standard of review.

Saucedo's constitutional claims are untenable given the absence of any error under state law. (*People v. Linton* (2013) 56 Cal.4th 1146, 1202 (*Linton*).) "[T]he routine application of provisions of the state Evidence Code law does not implicate a criminal defendant's constitutional rights." (*People v. Jones* (2013) 57 Cal.4th 899, 957.) It follows that a trial court's justifiable exclusion of evidence pursuant to standard rules such as sections 352 and 1101 does not impermissibly infringe upon an accused's right to present a defense. (*Linton*, *supra*, 56 Cal.4th at p. 1202; *Abilez*, *supra*, 41 Cal.4th at p. 503.)

We also reject Saucedo's claim that he was deprived of his right to confront witnesses under the Sixth Amendment to the United States Constitution. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a

9.

prototypical form of bias on the part of the witness, and thereby, to expose to the jury the facts from which jurors … could appropriately draw inferences relating to the reliability of the witness." (*People v. Chatman* (2006) 38 Cal.4th 344, 372, internal citations and quotation marks omitted.) However, "the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance … Thus, unless the defendant can show that the prohibited cross-examination would have produced a significantly different impression of [the witnesses'] credibility, the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment." (*Ibid.*, internal citations and quotation marks omitted.)

Saucedo had the opportunity to confront Detective Contreras about the underlying investigation, including his decision not to interrogate or interview Sanchez, and was limited only by the ruling that he not introduce evidence of Sanchez's prior convictions. The result was a lengthy cross-examination which stretched across two days of trial and highlighted inconsistencies between Detective Contreras's trial testimony and statements he had made in his police report and at the preliminary hearing. The cross-examination further revealed that Detective Contreras amended his official report of the incident at least four times, with the final revision being made nearly three years after the date of Saucedo's arrest. Much time was also devoted to the lack of thoroughness in the investigation and a review of each piece of evidence the detective and his colleagues had disregarded at the time of the search.

The excuse for failing to question Sanchez was scrutinized. After initially denying he spoke Spanish, Detective Contreras admitted he is able to speak "some" Spanish, but not fluently. He also acknowledged there are individuals within the Porterville Police Department who have the proficiency to facilitate an interrogation of a Spanish-speaking suspect. It eventually came to light that a member of the search team spoke Spanish but was never asked to assist with any questioning of Sanchez.

Saucedo does not attempt to explain how evidence of Sanchez's criminal history would have dealt a fatal blow to Detective Contreras's credibility, assuming the jury was not already skeptical of his veracity by the time he left the witness stand. Any such conclusion would be conjectural under these facts. Moreover, there is nothing to indicate Detective Contreras had personal knowledge of Sanchez's prior convictions during the relevant time period. In short, the record does not suggest the omitted evidence would have left the jury with a significantly different impression of the witness's credibility.

Saucedo's arguments pertaining to Detective McGowen's testimony are without merit since Detective McGowen was called as a defense witness and questioned on direct examination. The Confrontation Clause guarantees an opportunity for effective *cross-examination*. (*Delaware v. Fensterer* (1985) 474 U.S. 15, 19-20.) Furthermore, Detective McGowen was permitted to testify that he knew Sanchez from prior "contacts," though he could not remember if he actually saw Sanchez on the day of the incident. No showing has been made as to how evidence of his familiarity with Sanchez from prior "arrests," as opposed to prior "contacts," would have impeached his credibility. We find no basis for reversal under the Confrontation Clause or upon any other grounds raised in this appeal.

## DISPOSITION

The judgment is affirmed.