Filed 4/8/15  P. v. Williams CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C076584 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F08114) |
| v. | |
| ALEX WILLIAMS, | |
| Defendant and Appellant. | |

Defendant Alex Williams appeals his conviction following a jury trial.  He contends the trial court prejudicially erred in excluding evidence of third party culpability.  We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2013, at approximately 7:53 p.m., two police officers on special detail at Hiram Johnson High School for a school dance "heard a rapid succession of what sounded like three shots being fired."  The officers, in separate vehicles,

1

immediately drove in the direction of the shots and, a few minutes later, as one officer drove on Kroy Way (approximately one and a half blocks away from the school), he came across defendant and another person, later identified as John Blount, walking side-by-side down the street. Defendant and Blount were the only people the officer saw in the residential area. He passed them, made a U-turn, and drove up behind them, activating his spotlight in their direction.

On detaining defendant and Blount, the officer noticed defendant appeared nervous and kept putting his hands in his pockets. The officer asked defendant and Blount if they had heard any gunshots, and defendant responded "no," but they possibly had heard firecrackers. A search of defendant revealed a cell phone and a pair of black gloves in his pocket. Blount also had a pair of gloves. Defendant and Blount were placed in separate patrol cars.[1] The officer began to retrace the steps in the direction from which defendant and Blount had been walking, and about three feet from where he contacted defendant and Blount he found a loaded Glock .45-caliber handgun in the gutter. The handgun, which can hold a maximum of 14 bullets, had only 11 bullets inside. And the gun's trigger was in the rear position, which indicates it had been fired.

Officers did not recover any shell casings or spent bullets from the scene. Nor did the officer see defendant with a weapon or locate any bullets or weapons on his person. A forensic investigator tested the recovered gun for fingerprints, but found none. A

---

[1] While defendant was in the back of the patrol car and the officer was searching for the gun, defendant was recorded by the in-car camera saying: "Ah, blood. Oh, they found the banger [(gun)], blood. Please don't find the banger." "Ah, blood, they found the banger, blood. (unintelligible) found the banger. (unintelligible.) Ah, found the banger, blood." "Damn, blood. Fuck, J boned blood [(possibly John "Jay Bone" Blount)], you got the Glock right there, blood. Ah . . . . Mm-mm-mm . . . . Damn blood. They found the Glock right there blood. Ah . . . . Damn (unintelligible) they found the Glock. Mm-mm-mm . . . . You found the Glock, blood. Ah . . . . God damn blood. They found the Glock blood."

crime scene investigation officer came to the scene and swabbed defendant's and Blount's hands for gunshot residue. A criminalist analyzed those samples and found Blount's samples had no particles of gunshot residue and defendant's samples had three particles of gunshot residue (one from his right palm and two from the back of his left hand). The presence of particles of gunshot residue on a person's hands indicates either that the person was close enough to the gun when it was fired for the cloud of particles to settle on that person or that the person handled a fired gun, but does not necessarily indicate that that is the person who fired the weapon. A person with particles on his hands may displace them by placing his hands in his pockets and, if a person is wearing gloves during discharge of the weapon, the residue would settle on the gloves and not the hands.

Following a jury trial, defendant was convicted as a felon in possession of a firearm in violation of Penal Code section 29800, subdivision (a)(1).[2] Following the jury's verdict, the trial court found true the sentencing enhancement allegations that defendant had a prior strike conviction and a prior prison term, and sentenced defendant to seven years in state prison—the upper term of three years, doubled due to defendant's prior strike conviction, and an additional year due to defendant's prior prison term.

## DISCUSSION

At trial, defendant sought to introduce evidence of other crimes committed by Blount to corroborate a defense of third party culpability in the instant charged offense. He moved in limine to introduce evidence of Blount's three prior weapons-related convictions and arrests[3] to prove Blount's motive to "get rid of [the gun]," identity, and a

---

[2] For purposes of the jury trial, the parties stipulated defendant had a prior felony conviction.

[3] Blount's criminal record indicated he had the following convictions and arrests: (1) in 2002, conviction for felon in possession of a firearm (former Pen. Code, § 12021,

3

common plan or scheme. The trial court concluded the proffered evidence was not sufficiently unique, distinctive, or similar to the instant offense to establish motive, identity, or common plan or scheme. Instead, it found the evidence constituted character evidence showing Blount's propensity to carry a weapon, the crime charged in the instant action. Accordingly, though it acknowledged the evidence was relevant, it ruled the evidence inadmissible pursuant to Evidence Code section 1101.[4]

Defendant contends the trial court erred in excluding the proffered evidence because it was relevant to support his contention that it was Blount and not defendant who was in possession of the firearm. Thus, he argues that where there is circumstantial evidence that a third party may have committed the crime, otherwise inadmissible propensity evidence should be admitted because "the strictures of character evidence should not be as closely adhered to [with respect to third parties] as when it comes to evidence of the accused." We disagree.

In *People v. Davis* (1995) 10 Cal.4th 463 (*Davis*), the California Supreme Court was presented with a similar claim. There, the defendant sought to admit evidence of a third party's prior acts to corroborate the defendant's claim that it was the third party and not the defendant who had committed the murder. (*Id.* at p. 500.) The defendant argued section 1101 should not apply to evidence of third party culpability. (*Davis*, at p. 500.) The Supreme Court disagreed. It explained that section 1101, subdivision (a)'s stricture on propensity evidence contains no such limitation, and held that case law regarding third party culpability did not require or justify any such limitation. (*Davis,* at pp. 500-501.) The *Davis* court acknowledged that, pursuant to *People v. Hall* (1986) 41 Cal.3d 826

---

subd. (a)); (2) in 2005, no contest plea to robbery (Pen. Code, § 211) following arrest for home invasion robbery with a gun (Pen. Code, §§ 211, 245, subd. (a)(2), 459, 476); and (3) in 2007, conviction for assault with a firearm (Pen. Code, § 245, subd. (a)(2)).

[4] Undesignated statutory references are to the Evidence Code.

(*Hall*), evidence of third party culpability "should be treated like any other evidence," and as such it is relevant if "capable of raising a reasonable doubt of the defendant's guilt." (*Davis*, *supra,* 10 Cal.4th at p. 501.) However, "*Hall* did not abrogate . . . section 1101 as applied to such evidence [of third party culpability]." (*Davis,* at p. 501.)

Section 1101, subdivision (a) provides in pertinent part that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Section 1101, subdivision (b) codifies an exception to this restriction against propensity evidence to permit "admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, [or] identity . . .) other than his or her disposition to commit such an act."

Defendant does not contend the trial court wrongly decided that evidence of Blount's prior convictions and arrests is character propensity evidence that does not fall within an exception of section 1101, subdivision (b). Rather he contends "the strictures of character evidence should not be as closely adhered to" for third party culpability evidence because the danger of prejudice to the defendant is not present. Defendant cites no California or federal authority for the proposition that third party culpability evidence should be treated differently than other evidence; indeed to do so would be contrary to existing California Supreme Court precedent that evidence of third party culpability "should be treated like any other evidence." (*Davis, supra,* 10 Cal.4th at p. 501; *Hall*, *supra*, 41 Cal.3d at p. 834.) Nor are we convinced by defendant's suggestion that " 'bad character' evidence" should be admissible to demonstrate third party culpability just as it is to impeach a witness pursuant to the confrontation clause. (See *Davis v. Alaska* (1974) 415 U.S. 308, 320 [39 L.Ed. 2d 347, 356] [a defendant may use a witness's juvenile

criminal records to impeach him despite state interest in protecting confidentiality of juvenile offender's record].)  And, the existence of a statutory exception to the prohibition against propensity evidence for evidence of other sexual offenses or acts of domestic violence, elder abuse, or child abuse (§§ 1108, 1109) does not render erroneous the trial court's "strict adherence" to section 1101, subdivision (a) in this instance.

Accordingly, we find the trial court did not abuse its discretion in excluding evidence of Blount's prior convictions and arrests as improper character evidence pursuant to section 1101.

## DISPOSITION

The judgment is affirmed.


       BUTZ       , J.


We concur:


     BLEASE     , Acting P. J.


     DUARTE     , J.