Filed 9/30/22 P. v. Lane CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094039 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE022199) |
| v. | |
| JEREMY LANE, | |
| Defendant and Appellant. | |

A jury found defendant Jeremy Lane guilty of three counts of committing lewd and lascivious acts on a child under the age of 14 years by use of force or fear and one count of sodomy of a child under the age of 14 years by use of force or fear. (CT 171-174) The trial court sentenced defendant to an indeterminate term of 15 years to life plus a consecutive determinate term of 20 years, and a stayed determinate term of 10 years pursuant to Penal Code[1] section 654.

On appeal, defendant contends: (1) the trial court abused its discretion by refusing to conduct an Evidence Code section 402 hearing to determine whether defendant could

---

[1]     Undesignated section references are to the Penal Code.

1

use a computer-aided dispatch log (log) to impeach the victim, Cameron D.;[2] (2) the prosecutor committed error by misstating the law regarding sodomy during closing argument, an error exacerbated by the trial court's failure to give instructional guidance and which allowed the jury to find defendant guilty of two crimes based on the same act; (3) the trial court abused its discretion in finding the acts with respect to two of the lewd and lascivious counts and the sodomy count occurred on separate occasions under section 667.6, subdivision (d); (4) remand is appropriate because the trial court did not conduct an ability-to-pay hearing; and (5) remand for resentencing is appropriate because Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567) applies retroactively to him. Defendant further requests that we independently review Cameron's sealed psychiatric records, which the trial court reviewed in camera, to determine whether the trial court abused its discretion in finding there were no discoverable materials to be produced to the defense.

We conclude defendant has failed to demonstrate any error warranting reversal of his convictions, and the trial court did not abuse its discretion in finding there were no discoverable materials in Cameron's sealed psychiatric records. We accordingly affirm the judgment of conviction. We agree, however, that defendant is entitled to remand for resentencing due to the retroactive application of Senate Bill 567. Because we remand for resentencing, we do not address defendant's section 667.6 or ability-to-pay arguments.

FACTUAL AND PROCEDURAL BACKGROUND

Due to the nature of the arguments on appeal, we provide only a brief summary of the pertinent facts for context.

---

[2] We refer to the victim by her preferred name and use female pronouns because, at trial, Cameron expressed no preference for a specific pronoun.

2

Cameron's parents invited defendant, a stranger they met at the store where they were buying alcohol, to their home one evening to bandage his injured hand. At the house, Cameron's mother tended to defendant's hand, and the three drank alcohol and talked around the fire in the backyard. At some point, defendant asked to play the piano and went inside the house, where he met Cameron, who was then 12 years old.

Cameron's parents allowed defendant to spend the night because he had too much alcohol to drink, and they did not believe it was appropriate for him to drive. Later that evening, Cameron's mother went to bed while Cameron's father and defendant were still awake. Cameron's father told defendant he could sleep on one side of the couch and Cameron's father would sleep on the other side.

At some point, while Cameron's father was asleep in the living room, Cameron's mother woke up and saw defendant standing in the hallway; defendant told her that he had to use the restroom. Defendant and Cameron's mother moved to the family room, having a conversation about their respective family problems. Approximately 10 minutes later, Cameron briefly appeared to get water from the kitchen and then returned to her bedroom. Not long thereafter, defendant picked Cameron's mother up, which surprised her, and carried her to her bedroom, where he laid her down on her bed. Defendant hovered over her as if to kiss her, then stopped, walked to the door, paused, and shut the door behind him as he left.

Cameron woke up to find defendant standing in her doorway. Cameron thought defendant would leave but he got on top of her instead. Cameron unsuccessfully tried to squirm away and asked defendant to get off of her. Defendant tried to kiss Cameron while exerting pressure on her neck with his hand in a "choking position." Defendant then flipped Cameron onto her stomach and she could feel his erect penis through her clothing.

Defendant removed Cameron's pajama bottoms and underwear and touched the outside of Cameron's vaginal area with his penis for a couple of minutes. Defendant then

3

put his penis inside of her anus, which hurt. Defendant ejaculated and left the room. Defendant later returned and anally penetrated Cameron again, saying "he was sorry but . . . he had to keep going."

Defendant was charged with three counts of lewd and lascivious acts on a child under the age of 14 years by use of force or fear for the following acts: (1) "touch[ing] her body in the bedroom (first time)"; (2) "penis to anus"; and (3) "pull[ing the victim's] body towards him upon return (2nd time)." Defendant was also charged with sodomy of a child under the age of 14 years by use of force or fear.

The jury returned guilty verdicts on all charges. Defendant appeals.

DISCUSSION

I

*The Trial Court Did Not Abuse Its Discretion By Excluding The Log*

Defendant argues the trial court's refusal to conduct an Evidence Code section 402 hearing to determine whether he could use a log to impeach Cameron deprived him of his right of confrontation, to present a complete defense, and to receive a fair trial. "A trial court's ruling to admit or exclude evidence offered for impeachment is reviewed for abuse of discretion and will be upheld unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.) In that regard, "[t]rial judges retain 'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " (*Ibid.*) As explained below, we conclude the trial court did not abuse its discretion in excluding the log.

4

## A

### *Additional Background*

During the motions in limine discussion, defendant requested to use a log during trial containing statements relating to a welfare check done in response to a call from Cameron to Child Protective Services. In that call, Cameron purportedly reported that her mother had grabbed her chin and throat area and kicked her during an argument, and Cameron felt unsafe staying with her parents.

Defense counsel explained the log stated that Cameron had no visible injuries and, while speaking with the police, changed her story multiple times. The log further stated Cameron's mother was interviewed and denied the allegations. In defense counsel's view, this was relevant because "one of the actions that [Cameron] attributes to [defendant] is that [defendant] had grabbed her by the throat and, slash, choked her, but maybe not applied much pressure in choking, and of course [defendant] denies all the alleged conduct she is attributing to him as it relates to happening [*sic*] sexually or in the bedroom." Defense counsel argued the information in the log was relevant because it showed Cameron's mother said her daughter was lying to the police and the lie related to "her being grabbed in the throat area."

The prosecutor argued the information in the log was irrelevant to the charges in the case and requested the log be excluded under Evidence Code section 352. The trial court asked whether the prosecutor made inquiries to determine whether there was an underlying police report associated with the log. The prosecutor responded that she was checking with the investigator but she had not previously received a police report pertinent to the statements in the log.

The trial judge asked the prosecutor to "[s]ee if there is a report on it," but stated it did not believe "it would make much of a difference in the Court's ruling." The trial court preliminarily ruled it "would exclude any questioning of this because it is in the Court's view substantially different than is an allegation made in this case involving

criminal conduct. To [the court], it has marginal relevance that it happens to be a complaint of touching or grabbing her throat because that's a whole course of conduct that is alleged as to what the defendant did, whereas this is a separate issue involving a domestic issue between mother and daughter that didn't result in further complaints of abuse or something of that nature.

"And it's really difficult to know whether or not the mother is telling the truth or the daughter was telling the truth or it's a matter of perception between the two. The only way you can really find that out is if you bring them into court and subject them to cross-examination and dig into it, but in the Court's view that is very collateral to what we're doing. . . . [I]t will take the focus off what we're here for [and] it's a collateral issue and would involve -- you know, it would take time here in court to go into the details about something it's hard to imagine from the Court's point of view, it's hard to imagine a jury would really be influenced one way or the other on such an issue like that because it is not uncommon for there to be disputes between kids. They don't generally result in calls to the police, I'll give you that, but it's not -- it's just essentially bringing up an issue that happened in November of 2020 in order to impeach that person. It has really very little other relevance to get to what seems to the Court a pretty minor issue of impeachment and is not even clear impeachment. It's confusing impeachment. That is, mother and daughter having different opinions or perceptions about what occurred.

"So it seems to the Court that that is not a very profitable inquiry. I don't think it would be helpful to the jury particularly, and so since it is a collateral and would be I think a misuse of our time here, so on [Evidence Code section] 352 I will exclude that inquiry. But if you turn over that report and there is something more there than what I am currently hearing, we can revisit that issue."

Defense counsel asked whether he "could . . . put something on the record," and the trial court responded in the affirmative. Defense counsel said: "The Court's ruling surprises me, I'll be honest, because in my experience with the age of the victim and in

6

light of these charges, my experience is, again, jurors really take what the named victim says seriously, what they are saying in court and what the details they provided to the police and the fact that they looked the police officer in the eye and said certain things about the event. If nothing else, in this particular instance it says she was able to look a police officer in the eye and then changing stories, which I think I'm going to be able to bring out here in this case as well, changing stories, and on top of that the mom, she is going to be testifying anyway and she's going to say, no, my daughter was able to look to the police officer in the eye and lie to them. I have never touched her. I am approximately 40-something years old. [¶] I think it's clearly probative, and I think it's extremely important in a case like this, and I think it is error for the Court not to allow it."

The trial court responded: "Thank you. I appreciate your point of view on this, and I just think you also have to consider, from what I gather anyway, this is a young woman who there have been repeated issues related to her mental health over the last few years, and the fact during all that in the calls to the house because of issues that are arising, I think it just gets confusing as to what those issues are. . . . It seems just too far afield for me. Anyway, I guess we all made our record and we'll see what happens."

During trial, defense counsel renewed his request to use the log for impeachment purposes, seeking to ask Cameron's mother about the incident. Defense counsel argued he wanted to use the document "for a character reason" because Cameron had testified that her mother was kind and caring, and Cameron's mother had vouched for Cameron's honesty. Defense counsel explained the log showed Cameron had made false allegations and her mother said Cameron had lied to the police. He thus believed "[he] should be allowed to get into it."

The trial court asked the prosecutor whether she had found a police report regarding the incident; the prosecutor said there was no police report. The trial court asked whether the log "is something that is typed in by dispatch, or something that is typed in by an officer who arrives on the scene." Defense counsel responded that the

7

document was typed by dispatch. Defense counsel then read the entirety of the log into the record, which, in short, stated: Cameron called the Child Protective Services' hotline and " 'reported her mom grabbed her chin and throat during argument, and kicked her ankle' "; when the officers responded, they found " 'no visible injuries' " and Cameron's " 'story was all over the place, with multiple differences each time she told it to deputies' "; and Cameron's mother " 'stated she had been kicked, and was defending herself . . . [and] she never grabbed [Cameron's] chin or throat.' "

The trial court asked defense counsel to provide examples of the questions he wanted to ask Cameron's mother. Defense counsel responded: "Basically, as a question, that 'Cameron called the police on you November 2020 accusing you of grabbing her in the chin and throat?' I mean, obviously that's a compound question, but I would break it down. And 'That wasn't true?' " Defense counsel further argued, "[i]t's not that hard to do a quick [Evidence Code section] 402 hearing" to identify the sources of the information in the log.

The trial court said its prior ruling remained the same. The trial court first explained that the log contained at least three (if not more) layers or levels of hearsay, which rendered the evidence unreliable. The trial court next stated it viewed the evidence as "a collateral issue of impeachment" rather than "a direct type of impeachment" because "[i]t's not impeachment of what happened in [this] case specifically." The court explained, "the collateral issue is a statement about my mother, in general, being a kind, compassionate person. To go from that to impeach on this issue of something that happened in 2020 where she said her mom did something specific to her, it still doesn't impeach the issue that her mom is kind and compassionate. [¶] It's sort of a back-door way of trying to get -- trying to really -- I am not sure if he is trying to impeach the mother here that she is not really kind and compassionate, or have the mom say, well, since that didn't occur, that Cameron was lying. I guess it could work either way."

8

Defense counsel argued, "[b]oth lead to the conclusion which I want to get in, which I don't care how the Court does it, which is why I'm authoring both ways of admissibility. Because my perspective is, it's a prior false report."

The trial court responded that, "in either one of those situations[,] it's still very collateral." The trial court explained the jury had already heard that Cameron "has acted out" and "the only way . . . to really get to the bottom of [the Child Protective Services incident] is to bring in the person who Cameron initially made the phone call to, or find out what it is she or he said to somebody from [Child Protective Services], and have that person testify as to where they got the information. [¶] And I don't know how -- there is no other way to do that other than to take a side trip, and that is what [Evidence Code section] 352 is about from the Court's point of view. [¶] The Court needs to keep the issues framed, and not get into collateral issues, not get into something that is confusing, and that's what the Court's position is. It really seems to me that that is a collateral, confusing issue that is -- has very little relevance from the Court's observation of how this trial has played out. I feel like I have even a better idea now than I did during in limine motions of how collateral it really is. [¶] I am just going to have to say that reasonable minds can differ about this, and in this case I have to make the call that I think is right, and this is the call I think is correct."

B

*The Trial Court Did Not Abuse Its Discretion By*

*Excluding The Information In The Log Under Evidence Code Section 352*

Defendant asserts the trial court abused its discretion because: (1) the log was admissible under the business record exception to the hearsay rule; (2) the log could be used as a vehicle for impeachment; (3) an Evidence Code section 402 hearing would have resolved how the log could be used; and (4) the log was not irrelevant or collateral to impeachment, and would not have taken an undue consumption of time or misled the jury.

9

Generally, the application of ordinary rules of evidence such as Evidence Code section 352 does not infringe on the right to present a defense. (*People v. Hall* (1986) 41 Cal.3d 826, 834.) "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.) Indeed, neither the right to a fair trial nor the right to present a defense confer on defendant " 'a constitutional right to present all relevant evidence in his favor, no matter how limited in probative value such evidence will be so as to preclude the trial court from using [section 352].' " (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.) Likewise, notwithstanding the confrontation clause, a trial court may restrict cross-examination of a witness based on Evidence Code section 352. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623.)

We conclude the trial court did not abuse its discretion in excluding the log under Evidence Code section 352. We thus do not address the remainder of defendant's arguments on this issue.

Evidence Code section 352 provides a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The trial court carefully considered the probative value of the log and balanced it against the potential that the information contained therein would confuse the issues and mislead the jury. The trial court found the information in the log was of low probative value because it raised a collateral issue, and it was difficult to determine whether the incident gave rise to a truth/lie situation or merely a situation of differing perceptions, opinions, or perspectives between Cameron and her mother (a few years *after* Cameron accused defendant of the conduct at issue at trial). The trial court further explained that the information in the log had the potential to confuse the issues and mislead the jury into

10

picking sides between Cameron and her mother regarding a family incident that was unrelated to the issues presented in the case. As the trial court explained, and we agree, the nature of the throat-grabbing allegation with respect to Cameron's mother -- i.e., that her mother grabbed her throat and chin during an argument -- is substantially different from the course of conduct described by Cameron during the sexual assault -- i.e., that defendant, a stranger, forced himself on top of her and then exerted pressure on her neck with his hand (akin to a "choking position") while trying to kiss her.

While we agree with defendant that Cameron's credibility was a material issue in this case, that does not end the inquiry and demonstrate an abuse of discretion. The trial court deliberately and in detail discussed why it was excluding the evidence; we find no basis for concluding the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. The trial court imposed reasonable limits on cross-examination based on its determination that the information contained in the log would confuse the issues, be time-consuming, and would be only marginally relevant to the issues presented at trial. The trial court thus did not deprive defendant of his right of confrontation, to present a complete defense, and to receive a fair trial.

## II

### *There Was No Prosecutorial Error*

Defendant asserts a short portion of the prosecutor's closing argument constitutes prosecutorial error[3] because the prosecutor misstated the law regarding sodomy. We disagree.

---

[3]    We use the term "prosecutorial error" rather than "prosecutorial misconduct," although the terms are often used interchangeably. As our Supreme Court has explained, " '[t]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of

11

*Additional Background*

The second count with which defendant was charged was for committing a lewd and lascivious act, i.e., "penis to anus." The third count with which he was charged was for sodomy.

During closing arguments, the prosecutor argued: "Counts 2 and 3 are for the conduct of sodomy. What I mean by that is, Counts 2 and 3 are for the same conduct, okay? It's in and out, two different acts that we are talking about. It's the same act, but it is charged in different ways, because sometimes under the law a certain kind of conduct can actually violate more than one law. [¶] Now, you don't have to worry about it. It's up to the judge, after everything is over, to decide what to do with that. [¶] But here we have, as [defendant] is preparing to sodomize [Cameron], he actually commits the act of sodomy. It's full penetration. Or penetration, no matter how slight, is what the law says. [¶] But as he is putting his penis up to her buttocks, that, too, that touching before penetration would also be a crime. It's all one act, but it's just broken down into the leading up to it, and then the actual penetration."[4]

Immediately after addressing the specifics as to each count, the prosecutor discussed the elements of the lewd and lascivious act counts (including that the crime required defendant to touch Cameron with sexual intent), followed by a discussion of the elements pertinent to the sodomy count. In discussing the elements of the sodomy count, the prosecutor explained: "What is required here is that the defendant committed an act of sodomy so that he put his penis inside of her anus, which Cameron testified hurt, and

the transgression is prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666-667.)

**4** Defendant discusses statements made by the prosecutor *during sentencing*. We do not address or discuss those statements because they are irrelevant to the argument of prosecutorial error during closing arguments before the jury.

that she experienced pain when that happened, that she had difficulty using the bathroom the day after."

B

*The Prosecutor's Comments Did Not Constitute Error Under Federal Or State Law*

" ' "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits [error], and such actions require reversal under the federal Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' " ' [Citations.] ' "Under state law, a prosecutor who uses such methods commits [error] even when those actions do not result in a fundamentally unfair trial." ' [Citations.] 'When a claim of [error] is based on the prosecutor's comments before the jury, " 'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " ' [Citations.] Prosecutorial [error] can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the [error] was not 'harmless beyond a reasonable doubt.' [Citation.] Where the defendant does not contemporaneously object to alleged [error], we generally decline to review the claim on appeal unless a timely admonition could not have cured the harm." (*People v. Rivera* (2019) 7 Cal.5th 306, 333-334.)

Defendant argues the prosecutor misled the jury during closing argument when she said the act supporting the "penis to anus" lewd and lascivious act count and the act supporting the sodomy count was one act "just broken down into the leading up to it, and then the actual penetration." Defendant states the prosecutor's statement "would lead any reasonable juror to conclude that [defendant] could touch the anus of [Cameron] with his *penis leading up to* sodomy and be guilty of Count 2, but when he *actually penetrated* [Cameron] this constituted *actual* penetration charged in Count 3. In this way, the prosecutor broke down a single act into two separate acts which is a misstatement of law

13

since the mere act of *touching* [Cameron's] anus with his penis as pled in Count 2 already constituted the offense of sodomy."

The People argue defendant's argument is forfeited. They further argue, "[a]lthough the crime in count 2 was charged as 'penis to anus,' the record, along with the prosecutor's argument, clearly indicates that count 2 was referencing a touching, a forceful lewd and lascivious act, that was committed while [defendant] was clothed. It was not intended to be charged as, nor was it argued to be, an additional act of sodomy."[5]

Anticipating we may conclude defendant forfeited the argument because his counsel did not object to the prosecutor's closing argument or request an admonition to disregard the alleged impropriety, defendant asserts: (1) his sentence was unauthorized and thus may be corrected at any time; (2) the error affected his substantial rights "because of the failure to instruct the jury on alternative pleading"; and (3) his counsel was ineffective for failing to object "once counsel realized that the prosecutor was engaging in an argument that mischaracterized the law of sodomy by splitting an identical act into two separate acts."

For purposes of brevity, we will address the merits of defendant's weak argument. Initially, we note defendant has not shown the prosecutor's conduct consisted of a *pattern* of egregious conduct that infected the trial with unfairness. Thus, defendant has not shown a violation of the federal Constitution. (*People v. Rivera*, *supra*, 7 Cal.5th at p. 333.) As to prosecutorial error under state law, it is clear the short portion of the prosecutor's closing argument that constituted the purported error does not amount to the

---

[5]      We disagree with the People that the count clearly pertained to an act committed while defendant was clothed. We have found nothing in the prosecutor's arguments before the jury indicating the prosecutor was referring to a touching while defendant was clothed. The People rely on statements the prosecutor made "at the time that the information was amended." Such statements, however, were made *prior to* jury selection.

use of deceptive or reprehensible methods to persuade either the court or the jury. (*Id*. at p. 334.) Further, there is no reasonable likelihood that the jury construed or applied the short portion of the prosecutor's closing argument in an objectionable fashion. (*Ibid*.)

The prosecutor did not misstate the law of sodomy during her closing argument nor did the prosecutor legally mislead the jury by fragmenting one act of sodomy into two separate crimes, as defendant contends. The prosecutor explained to the jury that the second lewd and lascivious act count and the sodomy count "are for the same conduct . . . but it is charged in different ways." This was legally permissible because, as our Supreme Court has held, "a defendant can be convicted of both sodomy with a child under 14 and lewd conduct for the same act because 'the offense of lewd conduct is not a lesser included offense of statutory sodomy.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 637.) That is because sodomy is a general intent crime whereas committing a lewd and lascivious act requires specific intent to arouse, appeal to, or gratify the lust or passions or sexual desires of the defendant or of the child. (*People v. Pearson* (1986) 42 Cal.3d 351, 355-356, overruled on other grounds in *Vidana*, at pp. 650-651.)

The prosecutor's subsequent statement, "[i]t's all one act, but it's just broken down into the leading up to it, and then the actual penetration," was not "tantamount to an alternative pleading election," as defendant asserts. When the prosecutor discussed the elements pertaining to the different offenses, she clearly argued that the jury should find defendant guilty of sodomy because he "put his penis inside of [Cameron's] anus," but explained the lewd and lascivious act count required a finding that defendant touched Cameron with sexual intent.[6] In assessing a claim of prosecutorial misconduct in closing argument, we do not dissect the prosecutor's argument one word, phrase, or sentence at a

---

[6] Defendant takes no issue with the prosecutor's closing argument as to the elements of the crimes.

15

time; we instead "must view the statements in the context of the argument as a whole." (*People v. Dennis* (1998) 17 Cal.4th 468, 522.)

Here, the jury found defendant guilty of the general intent crime of sodomy and, by finding defendant guilty of the lewd and lascivious act count, found defendant had sexual intent when he made the "penis-to-anus" contact. The circumstances leading up to the "actual penetration," as the prosecutor put it, were pertinent to determining whether defendant acted with sexual intent. We find no basis for concluding, as defendant asserts, that the prosecutor fragmented the one act of sodomy into two separate crimes in a way that was legally misleading to the jury and resulted in defendant being "found guilty of two acts of sodomy."[7]

III

*The Trial Court Appropriately Found No Discoverable Material*

*In Cameron's Psychiatric Records*

Defendant subpoenaed all of Cameron's medical records "that involve/talk about (a) sexual assaults suffered, or lack thereof, (b) delusions, fantasies and/or issues/problems with knowing what is real, and (c) anything reflecting on her credibility." The trial court reviewed the psychiatric records produced in response to the subpoena in camera and, after balancing "the right of the defendant to have a completely fair trial" with "the rights of the victim in this case," ruled it found "nothing that should be turned over to the defense or the prosecution in this case." Defendant requests that this court independently review the sealed psychiatric records to determine whether the trial court

---

[7]   For this same reason, to the extent defendant complains of instructional error because the trial court failed to provide an ameliorative instruction in response to the prosecutor's purported error during closing arguments, we find no merit in such contention.

16

abused its discretion in ruling there were no discoverable materials to be produced to the defense. The People do not object.

We may independently examine the material the trial court considered in camera to determine whether the trial court's ruling was correct. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.) Having reviewed the sealed psychiatric records, we conclude the trial court did not abuse its discretion in finding there were no discoverable materials to be produced to the defense.

IV

*Resentencing Is Appropriate Under Senate Bill 567*

In supplemental briefing, defendant contends his sentence should be vacated and the matter remanded for resentencing in light of recent amendments to section 1170, subdivision (b) pursuant to Senate Bill 567. The People concede the amendments to section 1170, subdivision (b), effective January 1, 2022, apply retroactively to defendant under *In re Estrada* (1965) 63 Cal.2d 740. The People further concede remand for resentencing is appropriate. We agree.

On April 30, 2021, after finding various aggravating factors and one mitigating factor, the trial court imposed the upper term for each of the lewd and lascivious act convictions, staying one of the sentences under section 654. The court explained the factors in aggravation were: defendant's crimes "involved great violence or acts disclosing a high degree of cruelty, viciousness, or callousness"; he had taken advantage of a position of trust or confidence when he committed the crimes; Cameron was "particularly vulnerable"; and "defendant engaged in violent conduct indicating a serious danger to society." The factor in mitigation was that defendant had no prior convictions.

Senate Bill 567 became effective January 1, 2022, and amended section 1170, subdivision (b) so that, among other things, aggravating circumstances now only justify the imposition of an upper term sentence if "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable

17

doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) The People correctly concede that the amended version of section 1170, subdivision (b) applies retroactively to defendant because it constitutes an ameliorative change in the law applicable to all nonfinal judgments on appeal. (See *In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

As defendant asserts, no factor in aggravation supporting the upper term sentences was stipulated to by defendant or found true beyond a reasonable doubt by the jury. The sentence should thus be vacated, and the matter remanded for resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated, and the matter remanded to the trial court for resentencing.

/s/
Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Krause, J.